ESTEBAN NÚÑEZ MELÉNDEZ, demandante y apelado, *v.* EL RECTOR DE LA UNIVERSIDAD DE PUERTO RICO, SR. JAIME BENÍTEZ, demandado y apelante.

Núm. 9271.—*Sometido:* Febrero 11, 1946. *Resuelto:* Marzo 29, 1946.

*James E. Curry*, abogado del apelante; *R. Arjona Siaca*, abogado del apelado.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

El presente recurso ha sido interpuesto por el demandado, Rector de la Universidad de Puerto Rico, contra sentencia de la Corte de Distrito de San Juan, por la que se le ordena que "proceda a expedir a favor del peticionario, Esteban Núñez Meléndez, nombramiento permanente como Instructor en Farmacognosia y en Teoría y Práctica Farmacéutica en la Universidad de Puerto Rico retroactivo dicho nombramiento para cubrir la totalidad del curso universitario 1945-46".

El peticionario apelado solicitó la desestimación, alegando que el recurso es frívolo. En el acto de la vista de la moción las partes argumentaron extensamente sobre los méritos del caso y acordaron dejar sometidos a nuestra decisión la moción y el caso en su fondo. La moción debe ser declarada sin lugar. Basta leer las alegaciones y las cuestiones legales envueltas, para concluir que el recurso no es frívolo. Empezaremos, pues, haciendo un resumen de los hechos alegados en la petición y admitidos por el demandado.

En el año 1935, el peticionario fué nombrado para prestar servicios como Instructor Auxiliar en Farmacognosia y Teoría y Práctica Farmacéutica en la Universidad de Puerto Rico, continuando en el desempeño de dicho cargo hasta el año 1941 en que fué ascendido a Instructor en las mismas

materias. Continuó sirviendo en esta última capacidad, sin interrupción, desde el año 1941 hasta la terminación del año universitario 1944–1945.

No existe controversia alguna en cuanto a que los servicios prestados por el peticionario como tal Instructor, fueron estimados como enteramente satisfactorios. El Rector admite, además, que el peticionario tiene preparación cultural y títulos académicos que le capacitan para poder desempeñar satisfactoriamente dicho cargo de Instructor.

Al hacer los nombramientos para el curso universitario 1945–1946, el Rector extendió al peticionario un nombramiento como Instructor en las materias ya indicadas, pero se negó a extendérselo con carácter permanente, según lo hiciera con otros miembros del personal docente quienes reunían iguales condiciones que las del peticionario.

Los fundamentos de la petición de *mandamus* son:

1. La negativa del Rector a extenderle un nombramiento permanente, quebranta el texto y el espíritu de la sección 16 de la Ley núm. 135, conocida como "Ley de la Universidad de Puerto Rico", aprobada en 7 de mayo de 1942 ((1) pág. 763).

2. La obligación de extender al peticionario un nombramiento permanente, recae sobre el Rector, de acuerdo con la sección 9 de la citada "Ley de la Universidad de Puerto Rico".

3. La obligación que la Ley de la Universidad impone al Rector, de extender al peticionario un nombramiento permanente, es de carácter ministerial, sin que exista discreción en contrario que permita al Rector negarse a cumplir lo dispuesto en el estatuto.

Solicitó el Rector la desestimación de la petición, alegando que ésta no aduce hechos suficientes para constituir causa de acción:

(1) Porque no aparece que el peticionario haya agotado el remedio administrativo, recurriendo en apelación ante el

Consejo Superior de Enseñanza. Sección 5, Ley Organizando la Universidad de Puerto Rico.

(2) Porque no aparece que el deber que se pretende se cumpla por el demandado sea uno que la ley ordene particular y claramente como un deber resultante de un empleo, cargo o función pública.

(3) Porque no se ha hecho figurar como demandadas a todas las personas llamadas a actuar para que pudiera resultar válido el deber que se pretende hacer cumplir al demandado.

(4) Porque el deber de que se trata envuelve el ejercicio de una alta discreción; y en la petición no se alegan hechos constitutivos de un manifiesto abuso de tal discreción.

(5) Que la relación jurídica entre el peticionario y la Universidad es de carácter contractual y no se trata de un cargo público que pueda ser protegido por mandamus.

Declarada sin lugar la desestimación de la petición, el demandado solicitó que se dictara sentencia sobre las alegaciones. La corte inferior la dictó de acuerdo con la súplica de la demanda, imponiendo al demandado, por entender que había sido temerario, el pago de las costas más $300 para honorarios de abogado.

El apelante basa su recurso en las mismas cuestiones levantadas en su moción para la desestimación de la solicitud, a saber, (a) que teniendo el peticionario un remedio administrativo amplio, rápido y adecuado para la protección de su derecho, cual es la apelación para ante el Consejo Superior de Enseñanza, debió agotar ese remedio antes de recurrir al mandamus; y (b) que el deber que se pretende se cumpla por el Rector no es uno que la ley ordene particular y claramente como un deber ministerial resultante de un cargo o función pública, siendo por el contrario un deber de carácter discrecional, el cumplimiento del cual depende de la discreción del Rector.

■ Si el remedio de apelación para ante el Consejo Superior de Enseñanza (Sec. 5, Ley de la Universidad de Puerto Rico, de mayo 7, 1942) es o no adecuado y suficiente, es una cuestión que no está envuelta en el caso que estamos considerando, toda vez que no existe ninguna actuación o decisión del Rector de la cual pudiera haber apelado el peticionario. Lo único que existe es una controversia entre el Rector y el peticionario en cuanto a la interpretación y alcance de la sección 16 de la citada Ley de la Universidad de Puerto Rico, sosteniendo el Rector que dicha sección deja a su discreción el otorgar o no al peticionario un nombramiento con carácter permanente, después de transcurridos tres años de servicios satisfactorios, y alegando el peticionario, en contrario, que una vez transcurridos dichos tres años, por virtud de la misma ley y sin necesidad de acto alguno por parte del Rector, el nombramiento otorgádole para enseñar en la Universidad adquiere el carácter de permanente que dispone el estatuto.

■■ De conformidad con lo dispuesto en la sección 2 de la Ley Uniforme de Sentencias Declaratorias, aprobada en 25 de abril de 1931 (Leyes de 1931, pág. 379), ([1]) el peticionario tiene derecho a una determinación judicial de la divergencia existente entre él y el Rector de la Universidad acerca de la interpretación del citado estatuto universitario y a que dictemos una declaración en cuanto a sus derechos y a su *status* como miembro del personal docente de la Universidad. *Smith* v. *City Commission of Birmingham,* 336 Ala. 114, 181 So. 122; *Hughes* v. *Board of Education of New York,* 249 App. Div. (N. Y.) 158; Borchard *Declaratory Judgments,* 2a. Ed., págs. 25 a 28 y 861.

([1]) "Sección 2. (Facultad de Interpretación). Toda persona . . . cuyos derechos, estado u otras relaciones jurídicas fuesen afectados por un estatuto, . . . podrá obtener la determinación de cualquier divergencia acerca de la interpretación o validez de dichos estatutos . . . y además que se dicte una declaración de los derechos, estados u otras relaciones jurídicas que de aquellos se deriven."

Las Reglas de Enjuiciamiento Civil para las cortes de Puerto Rico, que empezaron a regir el 1ro. de septiembre de 1943, disponen que "habrá una sola forma de acción, la que se conocerá como acción civil" (Reg. 2); y que "Cualquier defecto en la denominación de la acción ejercitada o en la súplica del remedio solicitado, no será óbice para que la Corte, descartando el error así cometido, conceda el remedio que proceda de acuerdo con las alegaciones y la prueba" (Regla 81 (b)).

Procederemos, pues, a considerar y resolver el caso como si se tratara de una demanda sobre sentencia declaratoria. La Ley de la Universidad dispone lo siguiente:

"Sección 16.—Los nombramientos que se otorguen al personal docente, técnico y administrativo, con excepción de aquellos funcionarios en cuyos nombramientos interviene el Consejo Superior de Enseñanza, *tendrán,* una vez transcurridos tres (3) años de servicios satisfactorios a partir de la aprobación de esta Ley, *carácter permanente;* Disponiéndose, . . . La remoción de un miembro del personal docente, técnico o administrativo, cuyo nombramiento tenga carácter permanente, no podrá hacerse sin la previa formulación de cargos y oportunidad de defensa." (Bastardillas nuestras.)

Si el legislador; como pretende el apelante, hubiese tenido la intención de dejar a la discreción absoluta del Rector el nombramiento del personal docente de la Universidad, aun después de transcurridos los tres años de servicios satisfactorios, para ello hubiera bastado con la aprobación de la sección 9 de la misma Ley de la Universidad, que confiere esa facultad al Rector, con la limitación de que dichos nombramientos podrán ser revocados por el Consejo Superior de Enseñanza cuando, a su juicio, fueren perjudiciales a los intereses de la Universidad. Que esa no fué la intención legislativa, lo demuestra fuera de toda duda el lenguaje claro y preciso de la sección 16, supra. Quiso el legislador levantar y dignificar el personal docente universitario, colocando a sus miembros, después de un período probatorio, fuera del

alcance de las pasiones humanas y de los vaivenes de la política; y dispuso, que cuando un profesor o instructor nombrado para enseñar en la Universidad hubiere prestado servicios satisfactorios a la institución durante un período de tres años, contados desde mayo 7 de 1942, fecha en que comenzó a regir la Ley de la Universidad, su nombramiento *ipso facto,* tendrá o adquirirá carácter permanente y que después de haberse convertido ese nombramiento en permanente, el profesor o instructor no podrá ser removido de su empleo ''sin la previa formulación de cargos y oportunidad de defensa''.

El Rector admite que los servicios rendidos por el peticionario durante esos tres años han sido satisfactorios, pero insiste, de acuerdo con su interpretación del estatuto, en que las relaciones jurídicas entre el peticionario y la Universidad están desprovistas de la estabilidad y garantías inherentes a un nombramiento de carácter permanente y, en consecuencia, que el peticionario, mientras el Rector no le otorgue un nombramiento de carácter permanente, ocupa el cargo sujeto a la voluntad del Rector, quien podría removerlo arbitrariamente, sin formulación de cargos y oportunidad de defensa.

Admitidos los hechos esenciales de la petición o sea que el peticionario fué nombrado para enseñar en la Universidad, como Instructor, en el año 1941; que sirvió en esa capacidad, sin interrupción, hasta la terminación del año universitario 1944–1945, o sea durante tres años contados desde la fecha de la aprobación de la Ley de la Universidad; y, por último, que sus servicios durante esos tres años fueron satisfactorios, nos vemos precisados a declarar y así lo declaramos que la sección 16 de la Ley de la Universidad, supra, *ex-proprio vigore* y sin necesidad de la intervención del Rector, convirtió el nombramiento del peticionario en un nombramiento de carácter permanente, con todos los dere-

chos y privilegios inherentes al status de miembro permanente del personal docente de la Universidad de Puerto Rico.

*Debe modificarse la sentencia apelada en el sentido de eliminar de la misma aquella parte que ordena al demandado expedir nombramiento permanente a favor del peticionario, y en su lugar declarar que el peticionario tiene derecho, al amparo de la sección 16 de la Ley de la Universidad, al cargo de Instructor en Farmacognosia y en Teoría y Práctica Farmacéutica en el Colegio de Farmacia de la Universidad de Puerto Rico, con carácter permanente, y así modificada, confirmarse.*

EN MOCIÓN DE RECONSIDERACIÓN

Abril 30, 1946

El JUEZ ASOCIADO SEÑOR CÓRDOVA emitió la opinión del tribunal.

El demandado solicita reconsideremos nuestra sentencia.

Su contención inicial es que hemos dictado una sentencia declaratoria en una controversia que no estaba ante nos. La única cuestión envuelta en el caso, nos dice, era si él venía o no obligado a conceder un status permanente al demandante, mientras que nosotros hemos declarado que el status del demandante automáticamente se convirtió en permanente por efecto de la ley. Exponiendo su contención en nuestras

propias palabras, la cuestión no era si el demandante había adquirido status permanente, sino más bien si el demandado tenía la obligación de reconocer ese status.

Si nos equivocamos en la apreciación de la verdadera cuestión envuelta en el caso, el demandado no puede quejarse. Él ha asumido la actitud, en sus alegatos y particularmente en su informe, de que el demandante no tiene derecho a status permanente. Es más, su solicitud ahora es que se le dé una oportunidad en la corte inferior de demostrar que esa contención suya es correcta.

No nos convence el demandado de que nos equivocamos, ni tampoco hace la menor demostración de que el resultado pueda ser diferente si se le concede otra oportunidad.

El demandado no sostiene que interpretáramos erróneamente la actitud asumida por él en su informe. Sostiene que las *alegaciones* no demuestran que en momento alguno él haya negado que el demandante tenga derecho a status permanente, y que puesto que las *alegaciones* no demuestran la existencia de una controversia en cuanto a ese punto, la sentencia declaratoria es errónea.

Es cierto que no hay en las alegaciones ninguna manifestación expresa de que el demandado haya negado el derecho del demandante a status permanente. Pero las alegaciones demuestran que el demandado se negó a expedir al demandante un nombramiento permanente. Si esto fuera todo lo que se alega, quizás no sería suficiente, ya que la negativa del demandado podría basarse exclusivamente en la teoría de que un nombramiento permanente es innecesario. Aunque tal análisis de la controversia sería un tanto ingenuo y completamente ajeno a la realidad quizás sería necesario, desde el punto de vista técnico. Pero es que la demanda alega algo más. Alega que el demandado ha expedido nombramientos permanentes a otros, y que la negativa del demandado está predicada en la hostilidad del Decano de la Escuela de Farmacia hacia el demandante. Parece evidente

que estos hechos así·alegados excluyen la posibilidad de que·
la negativa del demandado a reconocer el derecho del de-
mandante obedezca a su creencia de que ese reconocimiento
es innecesario. Aunque hubiera cualquier duda en cuanto a
la interpretación que debe darse a las alegaciones de la de-
manda debe resolverse esa duda a favor del demandante.
El propio demandado hace un análisis excelente de la ver-
dadera interpretación que debe dársele a la demanda en su
alegato principal del cual citamos:

"La corte debe considerar además la cuestión de si lo que el de-
mandante realmente pretende es hacer que se cumpla la obligación de
nombrar. En su demanda él no sostiene que no ha sido nom-
brado. . . . Aparece que el demandante ya tiene su nombramiento. ·
. . . La demanda no revela los hechos en que funda el demandante
su conclusión de que el nombramiento es por el término de un año
solamente. La ley dispone que los nombramientos serán permanentes
después de tres años de servicios satisfactorios. Si, como él alega, él
ha rendido tales servicios por ese período, entonces su nuevo nombra-
miento puede muy bien venir a ser permanente por efecto de la ley.

"A riesgo de salirnos de los confines del récord, vamos a asumir
que su dificultad surge de alguna cosa incidental que dijera el Can-
ciller al hacer el nombramiento, como por ejemplo, 'nombro a usted
para desempeñar el cargo . . . *por nueve meses, para y durante el
año académico de 1945–46.'* La demanda entonces se reduce al deseo
del demandante, no ya de obtener un nombramiento, sino solamente
de obtener que el Canciller retire su supuesta manifestación de que
el nombramiento no es permanente. En otras palabras, en vez de un
nombramiento, lo que el demandante realmente desea es una especie
de sentencia declaratoria por el Canciller exponiendo la *conclusión
legal* de que su status es permanente. O quizás lo que desea es una
determinación del Canciller en cuanto al carácter satisfactorio de
sus servicios la cual vendría a hacer su status permanente. Pero no
hay nada en la ley que específicamente imponga al Canciller la obli-
gación de hacer una determinación tal, o de dictar tal sentencia de-
claratoria. Si el demandante desea una declaración en cuanto a su
status legal pudo haberla obtenido pidiéndole a la corte de distrito
una sentencia declaratoria de acuerdo con el procedimiento usual.".

Las alegaciones por lo tanto exponen lo que los infor-
mes de las partes demostraron constituye la verdadera con-

troversia, a saber, el derecho del demandante a un status permanente. Esa controversia, la única verdadera controversia que existe en el caso, fué resuelta por nuestra sentencia.

De las varias cuestiones adicionales que suscita el demandado en su moción, ninguna merece consideración minuciosa excepto su contención de que erramos al confirmar la concesión de honorarios de abogado al demandante. Tiene razón. Hemos resuelto que la apelación del demandado no era frívola. No creemos que esté justificado el imputarle temeridad al demandado por haberse defendido en este caso, que aparte de las cuestiones sustanciales que fueron planteadas envuelve para el demandado una cuestión importante de normas administrativas que no había sido antes objeto de consideración por las cortes. *Debe por lo tanto modificarse la sentencia en el sentido de eliminar la concesión al demandante de honorarios de abogado.*