FERNANDO SIERRA BERDECÍA, COMISIONADO DEL TRABAJO DE PUERTO RICO, demandante y apelante, *v.* PEDRO P. NIDO, por sí, y en representación de los agricultores de cañas de azúcar de Puerto Rico, etc., demandados y apelados.

Núm. 10025.—*Sometido:* Febrero 1, 1950. *Resuelto:* Noviembre 29, 1950.

*Ramón Cancio,* abogado del Departamento del Trabajo y a su vez del apelante; *R. Rivera Zayas, C. Rivera Cestero* y *Milton F. Rúa,* abogados del apelado Sr. Nido.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El Comisionado del Trabajo de Puerto Rico inició esta acción de *injunction* bajo la sección 23 de la Ley núm. 8 de 5 de abril de 1941 ( (1) pág. 303), según fué enmendada por

la núm. 451 de 14 de mayo de 1947 ( (1) pág. 951), (1) contra Pedro P. Nido, por sí y en representación de los agricultores de cañas de azúcar de Puerto Rico, miembros del sector de Colonos de la Asociación de Agricultores de Puerto Rico, (2) prohibiéndoles pagar a sus trabajadores "como correspondiente al pago suplementario de 47.9 centavos en el precio del azúcar para la zafra de 1946, hecho por la Commodity Credit Corporation, una suma inferior a 18 centavos por día de trabajo en dicho período, o que en cualquier otra forma violen, o aconsejen a otros violar, el inciso 6 del Apartado A, del Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico". Luego de ser declarada sin lugar una moción para desestimar y de haberse contestado la petición, se celebró el juicio correspondiente y la Corte de Distrito de Guayama dictó sentencia declarando sin lugar la petición.

Los hechos envueltos en el caso, sucintamente expuestos, son los siguientes:

La Commodity Credit Corporation, a quien nos referiremos en adelante como la C.C.C., una agencia del gobierno federal, compró la producción de azúcar cruda de Puerto Rico para el año 1945–46, según el *"1945–46 Purchase Contract Puerto Rican Raw Sugar"*, en su artículo 3, a un precio mínimo básico de 3.845 centavos por libra, libre a bordo en el puerto de embarque. En virtud del artículo 4 del propio contrato, el demandado recibió además de la C.C.C. un "pago de ayuda" o *"support payment"* de 87.5 centavos por quin-

---

(1) La sección 23, en lo pertinente, dispone:

"Será deber del Comisionado del Trabajo, por sí o por medio de sus agentes debidamente autorizados, hacer que se cumplan todos los decretos, reglas y reglamentos que dictare la Junta en ejercicio de las facultades que le confiere esta Ley. Por la presente se confieren completos poderes y plena autoridad al Comisionado del Trabajo para tomar las medidas que fueren necesarias a tales propósitos; y a tal efecto podrá interponer recursos de *injunction* y cualesquiera otros que fueren necesarios para hacer efectivos los términos de esta Ley y hacer que se cumplan los decretos, resoluciones u órdenes dictados por dicha Junta."

(2) El peticionario luego desistió de su acción de clase y continuó su acción contra el demandado Nido únicamente.

tal de azúcar producida por sus cañas en la zafra corres-
pondiente a dicho período, haciéndose constar en el recibo que
firmó el demandado que se consideraría dicho pago como un
aumento en el precio del azúcar con el fin de cumplir con la
sección (e) del *"1946 Wage Determination of the Secretary
of Agriculture"* expedido en noviembre 16 de 1945.

Transcurrida la zafra de 1945–46, la C.C.C. hizo al de-
mandado en 1947 un pago suplementario *(supplemental pay-
ment)* de 47.9 centavos por quintal de azúcar producido por
sus cañas en la zafra de 1946. Al recibir el expresado pago,
el demandado firmó como parte del contrato con la C.C.C.
para la venta de su azúcar de 1946–47, un recibo ([3]) por el
cual, entre otros particulares, aceptó que en atención a tal
pago, convenía en estimar el mismo como un aumento de

---

([3]) El recibo aludido (exhibit 3-A del peticionario) en su texto inglés,
dice así:

"UNITED STATES DEPARTMENT OF AGRICULTURE—Production and Mar-
keting Administration—*1946–47 purchase contra Puerto Rican raw sugar*
—GROWER'S RECEIPT FOR SUPPLEMENTAL PAYMENT WITH RESPECT TO 1945–46
CROP PUERTO RICAN RAW SUGAR

"The undersigned grower certifies that he has received $.........
from...........................being the grower's share, pursuant to
the Determination of Fair and Reasonable Prices for the 1945–46 Crop of
Puerto Rican Sugarcane, of the supplemental payment of 47.9 cents per 100
pounds made by Commodity Credit Corporation with respect to the quan-
tity of 1945–46 crop sugar produced from 1945–46 crop Puerto Rican sugar-
cane delivered by the undersigned grower to the Seller.

"In consideration of this payment, the undersigned agrees to treat
such supplementary payment, for the purpose of compliance with Section
(e) of the 1946 Wage Determination of the United States Secretary of
Agriculture, issued November 16, 1945, as a price increase of 47.9 cents
per 100 pounds of 96° raw sugar over the New York ceiling price in
effect on October 23, 1945 (3.75 cents per pound) in addition to the .875
cent per pound support payment which the grower has previously agreed
to treat as a price increase, on and from the date cutting of cane was
begun on the farm operated by the undersigned for the grinding of the
1945–46 crop until January 1, 1947.

"The grower further agrees that he will make available his share of
the raw sugar processed from 1946–47 crop sugarcane produced by him
for sale to Commodity Credit Corporation by Seller under the 1946–47
Purchase Contract Puerto Rican Raw Sugar, less the grower's propor-
tionate share of the quantity for local consumption stated in Article One
of the 1946–47 Purchase Contract Puerto Rican Raw Sugar, entered into
between Commodity Credit Corporation and Seller."

47.9 centavos en el precio por quintal de azúcar sobre el precio máximo en efecto en octubre 23 de 1945 en Nueva York (3.75 centavos por libra) con respecto al azúcar de la zafra de 1945–46, *en adición* al pago de ayuda anterior de 87.5 centavos por quintal de azúcar que los cosecheros habían convenido en estimar como un aumento en el precio del azúcar de dicha zafra, todo ello con el propósito de cumplir con la sección (*e*) del *Wage Determination* expedido en noviembre 16 de 1945.

De acuerdo con la referida sección (*e*) aplicable a los trabajadores empleados en la producción, cultivo o cosecha de la caña de azúcar en Puerto Rico durante el año 1946, el demandado venía obligado a pagarles, en lo que respecta al pago de ayuda de 87.5 centavos y al pago suplementario de 47.9 centavos, las sumas de 43 centavos y 11 centavos, respectivamente, o sea un total de 54 centavos de aumento de jornal diario a cada obrero.

En virtud de un convenio colectivo firmado con sus trabajadores para la zafra de 1945–46, el demandado se obligó a pagar y pagó a sus trabajadores un aumento en jornales de 45 centavos como correspondiente al pago de los 87.5 centavos de ayuda que habían recibido. Habiendo pagado ya, en virtud del citado convenio colectivo, un aumento de 45 centavos, sólo le restaría por pagar la suma de 9 centavos más de aumento de jornal diario con respecto al pago suplementario de 47.9 centavos por quintal de azúcar, o sea los 54 centavos de aumento de acuerdo con los pagos de referencia.

Sostiene el apelante, sin embargo, que si bien el apelado cumple con el *"Wage Determination"* pagando a sus trabajadores 9 centavos del pago de 47.9 centavos, no cumple así con el apartado A–6 del Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico, aprobado el 27 de febrero de 1943, de acuerdo con el cual debe pagar a sus trabajadores 18 centavos de dicho pago de 47.9 centavos. Dicho apartado dispone lo siguiente:

"*Aumento o Rebaja en el Precio del Azúcar*.—En el caso de que el precio del azúcar, hoy día fijado por el Gobierno Federal en tres dólares setenticuatro ($3.74) por quintal, subiese o bajase, el aumento o rebaja será distribuído a base del 50 por ciento para el agricultor o productor y 50 por ciento entre los obreros de dicho agricultor o productor.

"Cuando el precio del azúcar no esté fijado por el Gobierno, el mismo se determinará a base del promedio quincenal de precios que resulten de las ventas del azúcar crudo de Puerto Rico en el mercado de Nueva York (CIF New York)."

Para instrumentar la transcrita disposición, la Junta de Salario Mínimo de Puerto Rico promulgó una tabla reduciendo a dólares y centavos la participación correspondiente a cada obrero en cualquier aumento del precio por quintal de azúcar, tomando como precio básico $3.74 por quintal de azúcar. La tabla está hecha a base de aumentos progresivos de un centavo desde un centavo hasta un dólar, correspondiendo a cada aumento progresivo de un centavo en el precio del azúcar un aumento correlativo en jornales de $\frac{3}{8}$ de centavo ($37\frac{1}{2}\%$), o sea desde un aumento en los jornales de .375 centavos por el primer centavo de aumento en el precio del azúcar hasta un aumento en jornales de 37.5 centavos por un aumento de un dólar en el precio del azúcar.

Computado el pago de 87.5 centavos a base de la tabla de la Junta de Salario Mínimo, da un aumento en jornales de 33 centavos, el cual es inferior al de 43 centavos que resulta de la Determinación del Secretario de Agricultura. Sin embargo, el pago de 47.9 centavos conforme a la referida tabla, da un aumento en jornales de 18 centavos, el cual es superior a la diferencia de 9 centavos que le restaría por pagar al apelado para cumplir con la mencionada Determinación de 54 centavos, en vista de que por contratación colectiva ya había pagado 45 centavos.

La controversia entre las partes consiste esencialmente en que el apelado sostiene que sólo viene obligado a pagar dichos 9 centavos, porque los 54 centavos de la Determinación Secretarial son más que los 51 que corresponden a la suma de

los 33 y los 18 de la tabla de la Junta de Salario Mínimo. El apelante insiste en que 18 centavos son más que 9 y que el apelado viene obligado a pagar a sus obreros dichos 18 centavos para cumplir con el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo de Puerto Rico.

En otras palabras, el apelante sostiene que el pago de ayuda (*support payment*) de 87.5 centavos debe considerarse como uno separado e independiente del pago suplementario de 47.9 centavos hecho por la C.C.C. posteriormente al apelado como un reajuste al precio del azúcar de 1946 y como parte de la consideración o causa para el contrato de venta de las azúcares de 1947 y que, "Siendo dos aumentos y no uno, ambos deben computarse separadamente a los fines de obtener el aumento correspondiente en jornales de acuerdo con la tabla de la Junta de Salario Mínimo de Puerto Rico que instrumenta el apartado A–6 del Decreto Mandatorio núm. 3".

La corte inferior, al declarar sin lugar la petición, llegó a la conclusión de que de acuerdo con los términos expresos de los contratos firmados por las partes y los recibos firmados por el demandado, el pago de los 47.9 centavos constituyó "un pago suplementario al pago anterior de 87.5 centavos, o sea, en adición a éste, sumado a éste, no como un aumento de precio independiente . . ."

El apelante ha imputado a la corte inferior la comisión de siete errores. Tres de ellos se refieren al hecho de no haber la corte resuelto en contra del apelado ciertas defensas especiales alegadas por éste y consideramos que tales señalamientos no proceden pues, de haberse cometido, a quien podían afectar, o sea al demandado, obtuvo sentencia favorable por otros motivos. En cuanto a los demás errores señalados, pueden sintetizarse en uno al efecto de que cometió error la corte al estimar que los dos pagos hechos por la C.C.C. al demandado de 87.5 centavos y 47.9 centavos constituyeron pagos de ayuda (*support payments*) equivalentes a un solo aumento en el precio mínimo básico a que la C.C.C. pagó las azúcares de 1946 y como consecuencia resolver que ha-

biendo ya el demandado pagado a sus obreros 45 centavos correspondientes a los 87.5 centavos, sólo tenía que pagarles 9 centavos adicionales para completar los 54 centavos a que tenían derecho bajo la Determinación del Secretario de Agricultura, no siendo aplicable, por tanto, el apartado A-6 del Decreto Mandatorio núm. 3.

Después de haber considerado detenidamente la cuestión planteada somos de opinión que la corte inferior no erró al declarar sin lugar la petición en este caso.

Es cierto que de acuerdo con el artículo 4 del "*1945-46 Purchase Contract Puerto Rican Raw Sugar*" celebrado entre la C.C.C. y los productores de azúcar, se convino en que la primera pagaría a éstos un pago de ayuda o "*support payment*" el cual en efecto hizo, ascendente a 87.5 centavos por quintal de azúcar y que, de acuerdo con el artículo 4 del "*1946-47 Purchase Contract Puerto Rican Raw Sugar*" y como parte de la causa o consideración de dicho contrato, la C.C.C. convino en hacer a los productores de azúcar un "*Adjustment Payment-1945-46 Crop Sugar*" tan pronto como fuera posible después que toda la azúcar cruda de la cosecha de 1945-46 comprada por la C.C.C. bajo el "*1945-46 Purchase Contract Puerto Rican Raw Sugar*", hubiera sido embarcada. Empero, el hecho de que el primer pago se denominara "*support payment*" y el segundo "*adjustment payment*" no significa, como arguye el apelante, que se trate de dos aumentos separados sobre el precio mínimo básico establecido en el contrato de 1945-46. Entre la prueba documental admitida en este caso existen dos cartas que tienden a demostrar cuál es el alcance y significado de los dos pagos hechos por la C.C.C.

La primera (*exhibit* 13 del peticionario) es una carta dirigida por "Administrator of the Sugar Act of 1937" al Hon. August H. Andresen, Representante a la Cámara de los Estados Unidos, el 14 de marzo de 1947, la cual en parte dice así:

"March 14, 1947

"Hon. August H. Andresen
"House of Representatives
"Dear Mr. Andresen:

"This will acknowledge your letter of February 12, 1947, addressed to Mr. James H. Marshall, transmitting a letter from Mr. E. T. Fiddler, a member of a firm of Puerto Rican attorneys, with respect to the purchase of Puerto Rican Sugar by Commodity Credit Corporation.

"Mr. Fiddler's letter does not reflect either the purpose or terms of the 1947 Puerto Rican purchase contract. Neither does it reflect the numerous other programs undertaken by the Department of Agriculture to aid the Puerto Rican sugar industry. Throughout the war and prewar period the Department of Agriculture has given Puerto Rican producers the same fair and equitable treatment it has given continental and other domestic producers. Sugar Act payments have been made under the same formula, as provided in law, to Puerto Rican producers as to other producers. Likewise, benefit payments to producers and mills have been applicable in Puerto Rico as well as in other domestic areas. In addition, the Commodity Credit Corporation has purchased the Puerto Rican crops and has provided for advances at 90 percent of the estimated current values of stocks remaining after July 1 of each year, and has assumed shipping responsibilities for Puerto Rican sugar during the war period to give that area benefits fully equal to those afforded Cuba under our crop purchase program.

"Mr. Fiddler seems to feel that the Commodity Credit Corporation is attempting to hold Puerto Rico down to the Cuban level. Actually the Corporation is undertaking to do exactly the opposite, namely, to give Puerto Rico the advantage of every benefit obtained by Cuba under The 1946 and 1947 Cuban Sugar Crops Purchase and Sale Contract. Puerto Rican producers entered into contracts for the sale to the Commodity Credit Corporation of their 1946 crop sugar prior to the consummation of the final agreement with Cuba. The Cuban purchase contract contains certain so-called escalator clauses, which require that the price paid Cuba for sugar thereunder must be increased in the event the index numbers for food prices and living costs in the United States increase. The sharp price

rises that occurred in food costs last summer and fall therefore resulted in higher prices being paid for 1946 crop Cuban sugar than those contemplated at the beginning of the year.

"Naturally, Puerto Rico is paid higher prices than Cuba in order to reflect the tariff differential and any advantages that may exist as a result of lower costs in shipping Puerto Rican sugar to the continent. *However, the Commodity Credit Corporation believes that it should also pay Puerto Rico increases in the price for 1946 sugar above those provided in the former Puerto Rican purchase contract comparable with the increases paid for Cuban sugar under the escalator clauses of the Cuban contract. To do this it will be essential that Puerto Rican producers sell their 1947 crop sugar to the Commodity Credit Corporation, as Cuba has done, in order to do their full part in meeting the current sugar shortage.*

"Obviously, it would be difficult for the Commodity Credit Corporation to justify *any further payment with respect to 1946 crop Puerto Rican sugar if Puerto Rican producers refuse to enter into a 1947 agreement, or undertake to hold their sugar off the market as a means of gaining speculatively in the possible event of decontrol.* Since the present proposed agreement for Puerto Rican sugar includes cancellation privileges for the Puerto Rican industry as a whole in the event of decontrol, it should be pointed out that it would also be difficult to justify the Corporation's entering into it if, for any reason, sugar should be decontrolled before the 1947 agreements are consumated.

"*     *     *     *     *     *     *

"Mr. Fiddler also refers to the fact that wages in Puerto Rico are 30 percent above those of a year ago. As you know, *Puerto Rican wage rates in the sugar industry are related to sugar prices under the fair wage determinations made by the Secretary of Agriculture, in accordance with the sugar Act of 1937, as amended.*" (Bastardillas nuestras.)

Y la segunda (exhibit 4 del demandado) es una carta dirigida el 6 de octubre de 1947 por Charles W. Fowler, "Chief, Purchase and Price Support Division" del Departamento de Agricultura de los Estados Unidos, al Lic. G. Rivera Cestero, uno de los abogados del demandado, y la cual dice así:

"Oct. 6, 1947

"Mr. G. Rivera Cestero
"Rivera Zayas & Rivera Cestero
"El Mundo Building
"San Juan 7, Puerto Rico
"Dear Mr. Cestero:

"Your letter of September 16, 1947, to the Director of Information, Library of Congress, regarding the question 'Are support payments made by the Commodity Credit Corporation part of the price of sugar?', has been referred to this office which administers the Purchase and Price Support Programs for sugar of the Commodity Credit Corporation.

"The Price Support Programs of the Commodity Credit Corporation had as their purpose the maintenance of ceiling prices in the view of raising costs.  Therefore, the price support payments were made *in lieu of price increases and represented payments in addition to the amounts which producers received from price.*  The support payments were, however, adjusted downward for increases in the price of sugar whenever such increases occurred.  In the case of the 1946-crop these increases in price were very substantial and offset the support payment for different areas in varying degrees, depending on the time at which the sale of sugar from each area took place.  In the case of Louisiana and Florida no price support payments were made on 1946-crop sugarcane.  Puerto Rico, Hawaii, and the beet areas all received some price support payments but the amounts varied because of the timing of sales.

"*There will be no price support payments in addition to the purchase price for Puerto Rican raw sugar of the 1947 crop* but the price under this purchase increases as the price of Cuban sugar increases.  In the case of Hawaiian raw cane sugar and continental beet sugar of the 1947-crops any support payment (though it appears now that none is likely to be payable) will be in addition to price since the sugar is sold through commercial channels."  (Bastardillas nuestras.)

Lo expresado en estas cartas está en concordancia con el texto del recibo firmado por el demandado al recibir de la C.C.C. los 47.9 centavos (exhibit 3–A del demandante, nota (3), supra), al hacerse constar en el mismo que el demandado recibió la suma X, como su participación, de acuerdo con

la Determinación de Precios Razonables de la zafra de cañas de azúcar de 1945–46, del pago *suplementario* de 47.9 centavos por cada 100 libras hecho por la C.C.C. con respecto a la cantidad de la zafra de azúcar de 1945–46 producida de la zafra de 1945–46 de las cañas de azúcar entregadas por el agricultor al vendedor, haciéndose constar, además, que:

"En consideración a este pago, el firmante conviene *en tratar tal pago suplementario,* con el fin de cumplir con la sección (*e*) de la Determinación de Salarios de 1946 del Secretario de Agricultura de los Estados Unidos, expedida en noviembre 16, 1945, *como un aumento de precio de 47.9 centavos* por 100 libras de 96° de azúcar cruda por encima del precio mínimo en Nueva York en efecto en octubre 23, 1945 (3.75 centavos por libra) *en adición a los .875 centavos* por libra del pago de ayuda (*support payment) que el agricultor previamente ha convenido en tratar como un aumento de precio,* en y desde la fecha en que empezó el corte de caña en la finca operada por el firmante para la molienda de la zafra de 1945–46 hasta enero 1, 1947." (Bastardillas nuestras.)

De acuerdo con esta prueba, aun cuando el pago de los 47.9 centavos se hiciera constar como parte de la causa o consideración del contrato de 1946–47 y se le denominara *"adjustment payment",* la intención de las partes y especialmente la política pública expresada por la C.C.C. en cuanto a dicho pago, fué claramente que el mismo constituía un pago suplementario y adicional al ya hecho de 87.5 centavos y que ambos habían de considerarse como un aumento de precio de la zafra de 1945–46 a los efectos de la Determinación de Salarios del Secretario de Agricultura de los Estados Unidos. Siendo esto así, es dicha Determinación la aplicable a los 47.9 centavos pagados posteriormente, no aisladamente, sino como suplementarios y adicionales a los 87.5 centavos pagados anteriormente, o sea a la suma de ambas cantidades, $1.354 por quintal de azúcar, lo que equivale a tener el demandado que pagar a sus obreros 54 centavos adicionales. Si se aplicara el Decreto Mandatorio núm. 3 de la Junta de Salario Mínimo, la suma a pagar sería meramente 50.8 centavos, que es in-

ferior a la de la Determinación Secretarial. Si ya el demandado había satisfecho a sus obreros, de acuerdo con la Determinación Secretarial, al recibir los 87.5 centavos, 45 centavos, aun tiene que satisfacerles la diferencia entre 54 y 45 centavos, o sean 9 centavos, que es lo que ha estado siempre dispuesto a satisfacer. No erró la corte inferior al así resolverlo y desestimar la petición.

Antes de terminar esta opinión, deseamos hacer constar que si bien el apelado solicitó de la corte inferior que desestimase la petición por no proceder la concesión de un injunction en este caso, dicha moción fué declarada sin lugar. Aun cuando el demandado no apeló de dicha resolución, ha insistido en su alegato en esta cuestión. Creemos que tiene razón y que el injunction no era el remedio en este caso. Empero, como el apelante admite que aun cuando el apelado esté en lo cierto, siempre podríamos considerar y resolver el caso como si se tratara de uno sobre sentencia declaratoria, es en esa forma que debe entenderse que lo estamos resolviendo. *Cf. Núñez* v. *Benítez, Rector*, 65 D.P.R. 864, 868–69.

*Debe confirmarse la sentencia.*