LA SUCESIÓN DE JUAN MARRERO RIVERA, compuesta de sus hermanos MONSERRATE, ISABEL, CARLOS, EMILIO, NEMESIO, ANGELINA y MAÑUEL MARRERO RIVERA, y de sus sobrinos AGUSTÍN e IGNACIO ALVARADO MARRERO, demandantes y apelados, *v.* JOAQUÍN SANTIAGO y CARMEN SANTIAGO, demandados y apelantes.

Número 10735.

*Sometido:* 3 de marzo de 1953. *Resuelto:* 27 de abril de 1953.

*Ángel Roberto Díaz,* abogado de los apelantes; *V. Polanco de Jesús,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En acción reivindicatoria y en cobro de frutos, el tribunal a quo dictó una opinión en la que aparecen las siguientes Conclusiones de Hechos:

"Que Juan Marrero Rivera falleció el día 31 de agosto de 1949, siendo casado con doña Carmen Santiago; que no dejó hijos ni tampoco ascendientes, siendo los demandantes los úni-

cos y universales herederos de Juan Marrero Rivera, así como también la demandada Carmen Santiago en la cuota usufructuaria que le corresponde; que Juan Marrero Rivera era un hombre relativamente pudiente y en mayo de 1943 había vendido una finca y recibido un cheque del Gobierno de Puerto Rico por la cantidad de Seis Mil Cuatrocientos Veinte Dólares Nueve Centavos ($6,420.09); que para esa misma época Joaquín Santiago, conjuntamente con tres hermanos suyos, eran dueños de dos negocios pequeños de colmado y cafetín, los cuales estaban y están a nombre de Juan Santiago, uno en la calle San Sebastián y otro en la calle Cruz; que el volumen de ventas al año en los dos negocios no pasaba de Catorce Mil Dólares ($14,000) y los beneficios fluctuaban entre el diez y el doce por ciento sobre dicha cantidad de dinero; que de los beneficios obtenidos en estos negocios ellos sufragaban sus gastos personales, así como también los gastos de sus padres que vivían con ellos; que Joaquín Santiago no tenía otros bienes de clase alguna ni entradas por otros conceptos; que el 22 de octubre de 1943 don Juan Marrero Rivera concertó un negocio con don Epifanio Toro Pérez por el cual el primero compraba al segundo la casa marcada con el número 72 de la calle número 12 del plano de urbanización trazado por la División de Hogares Seguros del Barrio Obrero de esta ciudad de San Juan, por el precio convenido de Cuatro Mil Quinientos Dólares ($4,500); que al otorgarse la escritura se consignó en la misma como precio de la compraventa la cantidad de Dos Mil Dólares ($2,000), los cuales el Sr. Juan Marrero Rivera pasó a Joaquín Santiago para que hiciera su entrega al vendedor y el remanente de Dos Mil Quinientos Dólares ($2,500) los llevó por la tarde a la casa del Sr. Epifanio Toro Pérez, a quien se los entregó personalmente; que aunque toda la transacción del negocio la hizo el vendedor con don Juan Marrero Rivera, no obstante, el otorgamiento de la escritura se hizo a nombre de Joaquín Santiago; que la solicitud ante la oficina de la División de Hogares Seguros se hizo también a nombre de Joaquín Santiago; que se hizo en esta forma porque don Juan Marrero Rivera no podía adquirir la finca directamente ya que él tenía otras propiedades y no cualificaba como comprador según los reglamentos de la División de Hogares Seguros, pero que Joaquín Santiago, por su condición de insolvencia, era y estaba capacitado para servir de comprador de acuerdo con las exigencias de la ley en aquella época; que la casa en cuestión, además de ser comprada por el señor

Marrero, fué administrada, reparada y conservada como suya, alquilándola y cobrando sus rentas hasta el día de su fallecimiento, en 31 de agosto de 1949, desde cuya fecha los demandados han venido cobrando y percibiendo las rentas de dicho inmueble; que el dinero objeto de la compraventa pertenecía a la sociedad de bienes gananciales entre Juan Marrero Rivera y Carmen Santiago."

En la misma figuran también las siguientes Conclusiones de Derecho:

"De acuerdo con la evidencia ante la consideración del Tribunal, el inmueble objeto de esta acción fué comprado por Juan Marrero Rivera. El dinero con que se pagó su importe era perteneciente a la sociedad de bienes gananciales entre Juan Marrero Rivera y Carmen Santiago. Si el Sr. Marrero deseaba hacer una donación de dicho inmueble a Joaquín Santiago, era necesario entonces el consentimiento expreso de su esposa o de lo contrario el contrato adolecía de nulidad. Este hecho, a nuestro juicio, es suficiente para establecer la inexistencia del mismo, pues no puede haber contrato donde falta el requisito esencial del consentimiento de una de las partes. Pero hay más, como el demandado Santiago nunca pagó un solo centavo por la finca, en derecho nada había adquirido, ya que su única actuación fué el pasar el dinero que el Sr. Marrero Rivera le entregaba para el vendedor. No existía causa verdadera y era por lo tanto inexistente en lo que al demandado Santiago respecta, no pudiendo pasar nunca el dominio de dicho inmueble a su favor. El mero hecho de la fijación de un precio inferior a lo convenido no anulaba el contrato, pero al faltar uno de los requisitos esenciales para la existencia legal de un contrato, la causa, el mismo era inexistente ya que nunca tuvo ni pudo tener realidad cumplida.

"Desde cualquiera de los dos puntos de vista, ya bien por falta de consentimiento, ya porque no existe la causa, es lo cierto que la escritura a favor de Joaquín Santiago fué simulada y es enteramente inexistente por no concurrir en ella los requisitos esenciales para la creación de un contrato."

Fundado en esa opinión dicho tribunal dictó sentencia declarando que la finca descrita en la demanda es de la propiedad de Juan Marrero Rivera y Carmen Santiago; que

habiendo ocurrido el fallecimiento de aquél *abintestato* la finca es propiedad de la sucesión demandante en un 50 por ciento y de Carmen Santiago en el 50 por ciento restante, debiendo el demandado Joaquín Santiago otorgar escritura de traspaso dentro del término de diez días de ser firme la sentencia y que de no hacerlo así el márshal lo haría en su nombre, decretando, además dicha sentencia que los demandados rendirían cuentas de las rentas percibidas de dicho inmueble desde el fallecimiento de Marrero Rivera, y que pagarían las costas y $250 de honorarios de abogado.

En apelación los demandados imputan ocho errores al tribunal a quo, a saber: (1) declarar con lugar la acción reivindicatoria sin que los demandantes obtuvieran previamente la nulidad del título existente a favor de Joaquín Santiago; (2) resolver que la presente es una acción sobre inexistencia de contrato y no una para anular el contrato de compraventa, y que la misma no está prescrita; (3) que Joaquín Santiago era insolvente; (4) que no hubo consentimiento; (5) ni causa verdadera; (6) al admitir la declaración de Epifanio Toro Pérez, toda vez que éste estaba impedido de hacerlo yendo contra sus propios actos; (7) al admitir evidencia extrínseca a la escritura de compraventa; y (8) al resolver que la casa objeto de la demanda pertenece a la viuda y a la Sucesión de Juan Marrero Rivera.

■ Al iniciarse la vista del caso la parte demandada planteó la cuestión de que para instar una acción como la presente era necesario que previamente se hubiese anulado el título existente a favor del demandado Joaquín Santiago. Sin embargo, al indicarle el juez sentenciador que esa cuestión debió haberla presentado antes de la vista, el letrado de los demandados manifestó que la retiraba. No puede, por tanto, suscitarla ahora en apelación. Véanse, sin embargo, *González Rodríguez* v. *Fumero*, 38 D.P.R. 556, 570; *El Pueblo* v. *Dimas*, 18 D.P.R. 1061; *Sucn. Trías* v. *Puerto Rico*

*Leaf Tobacco Co.*, 50 D.P.R. 91; [1] así como la Regla 18*(b)* de las de Enjuiciamiento Civil.

■ Una acción reivindicatoria y en cobro de frutos como la aquí instada no prescribe dentro del término de cuatro años fijado por el artículo 1253 del Código Civil, ed. de 1930. La reivindicatoria de inmuebles prescribe, según el artículo 1857 de dicho Código, a los diez años entre presentes y veinte entre ausentes, con buena fe y justo título, y a los treinta años, sin necesidad de título ni de buena fe, según el artículo 1859. La acción en reclamación de frutos tampoco había prescrito. *Capó* v. *A. Hartman & Cía.*, 57 D.P.R. 196. Habiéndose otorgado la escritura de compraventa a favor de Santiago en 1943, la acción iniciada en 1951 no estaba prescrita. [1-A]

■ La prueba que el tribunal sentenciador tuvo ante sí justifica la conclusión de que el demandado Joaquín Santiago era insolvente. Siendo ello así, este Tribunal no está autorizado para alterarla. *Santiago* v. *Rodríguez*, 72 D.P.R. 266, 275.

■ ■ Durante la vista la parte demandada se opuso a que se permitiera que Epifanio Toro Pérez, el vendedor de la casa, declarara contra sus propios actos, tal cual los mismos figuraban en la escritura. En el supuesto de que su testimonio a ese efecto no hubiera sido admisible, los demandados renunciaron a la cuestión por ellos suscitada al repreguntar ampliamente sobre el particular a ese testigo.

Si bien la Ley de Evidencia en su artículo 25 dispone que "cuando las condiciones de un convenio se hayan consignado por las partes en un documento, se considerará que contiene

---

[1] En esos casos se establece el principio de que "cuando la parte demandante no deriva necesariamente su derecho de la nulidad del título de la demandada, sino de hechos y causas distintos de tal nulidad, no tiene aplicación la doctrina de previo ejercicio de la acción de nulidad."

[1-A] Como acción en cobro de dinero tampoco está prescrita. Artículo 1864 del Código Civil, ed. 1930.

éste todas dichas condiciones, por lo que no cabrá entre las partes y sus representantes o sucesores en interés, evidencia alguna de las condiciones del convenio, fuera de lo contenido en el documento. . .", sin embargo, se ha resuelto que esa "regla no prohibe una investigación en cuanto al propósito de las partes al otorgar y recibir el documento." *Ramírez* v. *Ramírez*, 65 D.P.R. 544, 548; *Nicorelli* v. *Ernesto López & Compañía*, 26 D.P.R. 55, 58. Además, los demandados repreguntaron ampliamente al testigo sobre la cuestión. En su consecuencia, la prueba oral ofrecida era admisible en evidencia.

Dada la naturaleza del presente pleito, según más adelante veremos, no es necesario discutir los errores señalados bajo los números 2 (en parte), 4 y 5.

Bajos los hechos de este caso podría alegarse que, para evitar un enriquecimiento injusto, surgió un fideicomiso resultante (*resulting trust*) en favor de Marrero Rivera. Véanse *Santiago* v. *Rodríguez*, 72 D.P.R. 266 y *Ruiz* v. *Ruiz*, 61 D.P.R. 823; cf. *Couverthie* v. *Santiago*, 62 D.P.R. 782; *Fernández* v. *Laloma*, 56 D.P.R. 367; 54 Am. Jur. 158, sección 203. No es posible, sin embargo, llegar a tal conclusión por las razones que pasamos a discutir en seguida.

De acuerdo con la Ley 53 de 11 de julio de 1921, pág. 387, "Para crear una Comisión de Hogares Seguros," según fué enmendada por la Ley núm. 60 de 30 de abril de 1928, pág. 467, "los solares asignados a solicitantes. . . y todas las construcciones levantadas en los mismos, . . sólo podrán venderse o heredarse de acuerdo con las disposiciones de esta ley— (art. 6(e))—disponiendo esa ley, además, en su artículo 9 que "No se recibirá solicitud alguna para el arrendamiento con derecho a propiedad, de terrenos sujetos a esta ley, a menos que la persona que haga aquélla sea: ... (2) Persona cuya entrada anual no exceda de $1,500; . . . (4) Sin otra propiedad en Puerto Rico o en ninguna otra parte, el valor

de la cual exceda de Trescientos Dólares ($300.00)." (²) De acuerdo con la prueba que el tribunal sentenciador tuvo ante sí Juan Marrero era un hombre relativamente pudiente que acababa de vender una finca y había recibido del gobierno la cantidad de $6,420.09. Joaquín Santiago, sin embargo, era persona de pocos recursos y por ello la solicitud ante la oficina de la División de Hogares Seguros se hizo a nombre de éste. A su favor se otorgó, asimismo, la escritura de compraventa. La prueba creída por el tribunal a quo demuestra que el propósito de las partes al concertar la transacción en la forma en que se hizo no fué otro que violar las disposiciones de la referida Ley de Hogares Seguros, que impedían que Marrero Rivera adquiriera directamente la propiedad en cuestión. Tal actuación de parte de ellos fué un acto contrario a dicha ley, y por ende, nulo y sin valor alguno. Véase el artículo 1207 del Código Civil.

▉▉ De haberse constituído el supuesto fideicomiso por escritura pública, tal cual lo exige el artículo 5 de la Ley 41 de 23 de abril de 1928, pág. 295, el mismo resultaría nulo por ser contrario a la moral pública. (³) De igual modo la moral pública impide la creación de un fideicomiso resultante para tal fin ilegal. Al tratarse esta cuestión, en *Restate-*

---

(²) El artículo 16 de la Ley 53, supra, dispone, además que: "Todo asunto respecto a transferencia de contratos y arrendamientos con derecho a propiedad, anulación de contratos, calificación de los herederos en caso de muerte, falta de pago, o reversión del terreno a El Pueblo de Puerto Rico, será resuelto de acuerdo con las reglas y reglamentos que dicte la Comisión de Hogares Seguros."

El artículo 24 de la misma, por otra parte preceptúa que: "Las reglas y reglamentos adoptados por la Comisión de Hogares Seguros que estén en vigor tendrán fuerza de ley."

En este pleito, en el cual no es parte la Autoridad Sobre Hogares de Puerto Rico—Véase la Ley 85 de 8 de mayo de 1945 (pág. 305)—no está envuelta cuestión alguna que requiera el examen de tales reglas y reglamentos.

(³) El artículo 22 de la Ley 41, supra, también dispone que:

"El fideicomitente puede crear el fideicomiso en cualquier forma, para cualquier fin y bajo cualesquiera términos o condiciones *que no infrinjan la ley o la moral pública o que no se prohíban específicamente en esta Ley.......*"

*ment of the Law, Trusts,* se dice en la sección 444*(d)*, Vol. II, pág. 1360 que: "Si una persona sin derecho a adquirir bienes del gobierno paga el precio exigido por los mismos y recibe el título de ellos a nombre de otra con el fin de defraudar al gobierno, aquélla no puede alegar la existencia a su favor de un fideicomiso resultante, aunque el gobierno no dé paso alguno para anular la compraventa por razón del defraude." No surgiendo un fideicomiso resultante, la acción reivindicatoria no debe prosperar.

No obstante, al pleito que está ante nos le son aplicables las reglas de Enjuiciamiento Civil. (Regla 81). Por la primera de ellas se dispone que: "Estas reglas. . . se interpretarán en forma tal que garanticen una solución justa, rápida y económica de toda acción." Y por la 8*(f)* que: "Todas las alegaciones se interpretarán con el propósito de hacer justicia sustancial." Interpretadas en esa forma, podemos llegar a la conclusión de que si bien como acción reivindicatoria y en cobro de frutos la demanda ha fracasado, sin embargo, la misma puede prosperar ·como acción en cobro de dinero (*in rem verso*). Cf. *Núñez v. Benítez, Rector*, 65 D.P.R. 864; *Sierra, Comisionado v. Nido*, 71 D.P.R. 905, 917; *Espinosa v. Ramírez, Alcaide*, 71 D.P.R. 10, 14; *Mena v. Llerandi*, 70 D.P.R. 176, 181. De no ser así, habría un enriquecimiento injusto en favor del demandado Santiago. Véase *Compañía Popular v. Corte*, 63 D.P.R. 121, 128.

*La sentencia apelada será modificada en el sentido de conceder a los demandantes únicamente la mitad de los $4,500 pagados por la propiedad en cuestión,* (⁴) *con intereses desde el 31 de agosto de 1949, fecha del fallecimiento del causante de los demandantes, y así modificada será confirmada.*

---

(⁴) El 50 por ciento restante de la cantidad pagada por la propiedad pertenece a Carmen Santiago, viuda del causante de la sucesión demandante. Ella figura en el pleito como demandada.