Manuel H. Rossy, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de San Juan, Hon. Jesús A. González, Juez, demandado; Sucesión de Luis Lloréns Torres, etc., interventora.

Número 2010.

*Reasignado:* 10 de julio de 1958. *Resuelto:* 24 de septiembre de 1958.

*Rodríguez Ema & Rodríguez Ramón,* abogados del peticionario; *Brown, Newsom & Córdova* y *Otero Suro & Otero Suro,* abogados de la interventora; *Gabriel de la Haba,* como *amicus curiæ.*

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

El peticionario, Manuel H. Rossy, presentó en el Tribunal Superior, Sala de San Juan, una demanda de intervención en un pleito sobre Declaración de Comunidad, Deslinde, División de Comunidad y Reclamación de Frutos y Daños, en el cual figuraban como partes demandantes Raúl R. Mimoso (como cesionario de Antonia Ramos Buist), Francisca e Hilda Ramos Morales, Tomasa Morales Vda. de Ramos y las Sucesiones de Jesús Ramos Buist, León Ramos Buist, Clemencia Ramos Buist y Edmundo Buist Ramos, y como demandados la Sucesión de Luis Lloréns Torres, compuesta de sus hijos Luis, Elio y José Lloréns Rivero y de su viuda Carmen Rivero Rodríguez.

En dicha demanda de intervención se alegó como primera causa de acción que el interventor era el único heredero de Manuel F. Rossy y los demandados los únicos herederos de Luis Lloréns Torres; que Antonio, León, Jesús y Clemencia Ramos Buist habían sido dueños de una finca de 220 cuerdas, descrita en la demanda, que vendieron a Luis Lloréns Torres por escritura pública núm. 42, otorgada en 29 de octubre de 1919, ante el Notario Luis Abella Blanco; que Luis Lloréns Torres, los mencionados vendedores y Manuel F. Rossy otorgaron un convenio privado, el cual se

unió a la demanda de intervención como Exhibit *A*, en virtud del cual los referidos vendedores y Manuel F. Rossy se obligaron a cooperar con Luis Lloréns Torres en un pleito con El Pueblo de Puerto Rico en relación con 137 cuerdas de manglares que formaban parte de la finca vendida y que a cambio de ello Lloréns Torres se comprometió a vender a los demás comparecientes de tener éxito en dicho pleito, la mitad de esos manglares por la suma de $1,000, que las partes consideraron era el justo valor de la ayuda o cooperación que los demás comparecientes se obligaron a prestar a Llorens; que éste salió victorioso en dicho pleito que terminó el 18 de febrero de 1931; que Manuel F. Rossy le prestó su cooperación a Lloréns Torres, de acuerdo con el convenio privado, y que por tal razón quedó constituída una comunidad de bienes entre Lloréns y los demás firmantes del convenio privado; y por último, que Lloréns quedó en la posesión de los terrenos de mangles en representación de todos los componentes de dicha comunidad, por lo cual solicitó el interventor: "que se reconozca que el demandante Manuel H. Rossy, como heredero de don Manuel F. Rossy, en unión a los demás condómines, son dueños de todos los terrenos de mangles que poseen los demandados procedentes de la finca rústica descrita en el párrafo primero de esta demanda".

Como segunda causa de acción alternativa dicho interventor, peticionario ante nos, alegó que la intención de las partes al otorgar la escritura de 29 de octubre 1919 y el convenio privado de igual fecha fue la de vender a Lloréns Torres solamente los terrenos firmes de la finca y trasmitirle los mangles con un área de 137 cuerdas que reclamaba El Pueblo de Puerto Rico como fiduciario (*trustee*) para beneficio de Manuel F. Rossy y los demás comparecientes, pero reconociéndosele a Lloréns una mitad de dichos terrenos de mangles como compensación por sus servicios legales en el litigio con El Pueblo de Puerto Rico que las partes esperaban. Se alegó además que el convenio privado antes mencionado era igualmente un medio para ". . . compensar a

don Manuel F. Rossy . . . sus servicios profesionales . . . en la ayuda que había de dar y efectivamente dió para esclarecer el derecho y título de propiedad de los terrenos de mangles de la finca rústica . . . (reconociéndosele) una sexta parte de la otra mitad como compensación por servicios, todo sujeto a la condición de que finalmente se resolviera a favor del Sr. Lloréns Torres el pleito sobre la propiedad de los mangles con El Pueblo de Puerto Rico".

Como tercera causa de acción adujo el interventor que Lloréns Torres y sus sucesores realizaron una serie de negociaciones como resultado de las cuales sólo quedaron en poder de los demandados 40.827 cuerdas de mangles, parte de las cuales poseen como únicos dueños y parte en comunidad con Mercedes de la Torre; que el valor de los mangles de que dispusieran los demandados o sus causantes es de $5,000 por cuerda; que el demandante y los demás condómines han sido privados por actos de los demandados o de su causante, en la proporción correspondiente, de la suma de $136,365. En vista de ello solicita "que por haberse dispuesto por el causante de los demandados, o por los propios demandados, de una cantidad de terrenos de mangles mayor que la que les correspondía a virtud de los contratos a que se refieren la primera y segunda causa de acción, y faltar al demandante 3.975 cuerdas de mangles por su participación indivisa en la mitad de dichos terrenos, se condene a los demandados a pagar al demandante la suma de $19,865, valor de dichos terrenos de los cuales dispusieron los demandados o sus causantes".

En la cuarta causa de acción el interventor solicita el deslinde de los mangles a que hemos hecho referencia, alegando que éstos están unidos a terrenos secos propiedad de los demandados y que para determinar su extensión y localización se hace necesario practicar un deslinde. Además alega que dichos terrenos son susceptibles de división, y solicita que se dividan entre los comuneros y que se ordene a

los demandados que otorguen las escrituras públicas que sean necesarias para ello.

Los demandados solicitaron la desestimación de las cuatro causas de acción ejercitadas en dicha demanda por estar éstas prescritas conforme a lo dispuesto en el art. 1864 del Código Civil (31 L.P.R.A. sec. 5294) y también solicitaron la eliminación de los apartados 2, 3 y 4 de la segunda causa de acción por ser impertinentes y por no ser admisible prueba para sustanciar lo alegado en los mismos de acuerdo con el art. 25 de la Ley de Evidencia (32 L.P.R.A. sec. 1668). El tribunal a quo dictó resolución declarando con lugar la moción de desestimación en cuanto a la primera, tercera y cuarta causas de acción y también la moción eliminatoria. No conforme con esta resolución, el interventor acudió ante este Tribunal mediante petición de certiorari solicitando la revisión de la misma y dicho auto fué expedido. Le imputa al Tribunal Superior los siguientes errores:

"Primer Error.—Erró el tribunal inferior al sostener que la primera causa de acción ejercitada en la demanda de intervención y por consiguiente la tercera y cuarta causas de acción están prescritas a tenor con el artículo 1864 del Código Civil, por tratarse de una acción personal que prescribe a los 15 años.

"Segundo error.—Erró el tribunal inferior al ordenar la eliminación de los apartados 2, 3 y 4 de la segunda causa de acción alternativa a tenor con el artículo 25 de la Ley de Evidencia."

## I

La primera causa de acción alegada por el interventor en su demanda descansa enteramente en el convenio privado del 29 de octubre de 1919. El tribunal a quo determinó: que dicho contrato establecía una obligación condicional de parte de Lloréns Torres de venderle a los otros comparecientes la mitad de los mangles en cuestión; que constituía un contrato sobre promesa de venta que no podía en forma alguna considerarse como traslativo del dominio y que de la faz de la demanda surgía que la condición de la

cual dependía la obligación de Lloréns se había cumplido desde el 18 de febrero de 1931, cuando terminó favorablemente para éste el pleito contra el Gobierno de Puerto Rico a que hicimos referencia anteriormente. En vista de ello concluyó el Tribunal Superior que procedía la desestimación de la demanda en cuanto a dicha causa de acción por estar ésta prescrita conforme a lo dispuesto en el art. 1864 del Código Civil. (¹) Y habiéndose desestimado la primera causa de acción, procedió a desestimar también la tercera y cuarta causas de acción que descansan en el supuesto de la primera: que existía una comunidad de bienes entre el interventor y los demandados.

Por su parte el interventor señala que el tribunal a quo, al resolver la moción de desestimación, debió interpretar las alegaciones en la forma más favorable para el demandante (*Boulon* v. *Pérez*, 70 D.P.R. 988 y *Cruz* v. *Ortiz*, 74 D.P.R. 321), y que considerados en esta forma los hechos alegados son suficientes para establecer una reclamación válida. Sostiene que de la demanda aparece que se cumplió la condición suspensiva, o sea, que Lloréns resultó victorioso en el pleito; que recibió la cooperación de los demás comparecientes en el convenio según lo pactado; y que se efectuó la tradición que exije la ley como requisito indispensable para que el contrato pudiera culminar en la trasmisión del dominio. (²) A base de esto concluye que, al cumplirse la condición suspensiva, su causante advino propietario de una parte alícuota de los mangles, mediante la creación de una comunidad de bienes, y que por consiguiente no estaba prescrita la acción ejercitada por él en la primera causa de acción de la demanda, a tenor de lo dispuesto en el art. 1865 del

---

(¹) "La acción hipotecaria prescribe a los veinte años, *y las personales, que no tengan señalado término especial de prescripción, a los quince.*" (Bastardillas nuestras.) 31 L.P.R.A. sec. 5294.

(²) Véanse los arts. 549, 1048, 1351, 1352 y 1353 del Código Civil (ed. 1930). Para este último aserto se basa en que en la demanda se alega que el referido documento privado "estaba en posesión ·de Don Manuel F. Rossy y se encontró entre numerosos papeles del fenecido que quedaron en poder de su viuda al fallecimiento de aquél."

Código Civil (31 L.P.R.A. sec. 5295): "No prescribe entre
coherederos, condueños o propietarios de fincas colindantes
la acción para pedir la partición de la herencia, la división
de la cosa común o el deslinde de las propiedades con-
tiguas." (³)

A nuestro juicio el Tribunal Superior no cometió error
al concluir que de la demanda no aparece que Lloréns Torres
hubiese trasmitido el dominio de la mitad de los mangles a
los demás firmantes del convenio privado del 29 de octubre
de 1919. Sólo podríamos llegar a la conclusión que pretende
el peticionario determinando que el convenio en cuestión fué
un contrato de compraventa traslativo del dominio y además
que se efectuó la tradición de la cosa vendida. Pero es obvio
que el convenio de 29 de octubre de 1919 no podría consi-
derarse nunca como uno de compraventa. Disponía lo
siguiente:

"Los contratantes en el presente convenio privado son de
una parte, Don Luis Llorens Torres acompañado de su esposa
Doña Carmen Rivero Rodríguez; y de la otra parte el abo-
gado Don Manuel F. Rossy y los hermanos Ramos Buist, lla-
mados Don León, Don Jesús, Doña Antonia y Doña Clemencia,
quienes estipulan el siguiente compromiso:

"1.—Que los firmantes esposos Llorens Rivero son dueños
de la finca denominada MONTE-REY, de doscientos veinte cuer-
das radicada en el barrio de Monacillos de Río Piedras; y que
en dicha finca hay un pedazo de terreno de manglares, en la
parte Norte de la misma, que pretende sin razón alguna recla-
marlo el Pueblo de Puerto Rico.

"2.—Que los firmantes hermanos Ramos Buist y el señor
Rossy, se comprometen, a ayudar al Sr. Llorens Torres prestán-
dole toda la cooperación necesaria en la defensa de las dichas

---

(³) En la demanda se alegó que ". . . establecida la comunidad de bie-
nes entre el causante del interventor y Don Luis Lloréns Torres, éste
continuó en la posesión de esos terrenos en nombre y representación de
todos los componentes de dicha comunidad." Véase la doctrina estable-
cida en *Alonso* v. *Muñoz*, 76 D.P.R. 549 (1954) y *Sucn. Rivera* v. *Manso*,
64 D.P.R. 645 (1945), interpretativa del citado art. 1865. 1 Castán,
Derecho Civil Español y Foral (vol. II, 9ª ed. 1955) 710; Sentencia del
Tribunal Supremo de España de 23 de diciembre de 1952, 40 Jur. Civil
(n. s.) 1100.

acciones que intenta el Pueblo de Puerto Rico; entendiéndose que la ayuda del Sr. Rossy será como abogado y consejero, mientras que la cooperación de los hermanos Ramos Buist ha consistido solamente en suministrarle al Sr. Llorens Torres, todos los antecedentes y datos necesarios para su defensa; los cuales antecedentes y datos el Sr. Llorens Torres confiesa que ya le han sido suministrados por los cuatro firmantes hermanos Ramos Buist.

"3.—En consideración a dicha ayuda o cooperación del señor Rossy y de los hermanos Ramos Buist, el Sr. Llorens Torres, si tuviese éxito en las dichas acciones del Pueblo de Puerto Rico, por la presente se compromete a vender o traspasar a los otros comparecientes la mitad de los expresados manglares que sean objeto de dichas reclamaciones; haciéndose aquí constar que la parte de manglares a que se refiere este contrato se halla situada al Norte del inmueble, en el espacio o perímetro comprendido entre el río Puerto Nuevo, la quebrada Berraco, el Seboruco del Rey y el antiguo caño de la quebrada Margarita, y se fija como precio de dicha venta la suma de UN MIL DOLLARES, que los contratantes consideran ser el justo valor de la ayuda o cooperación referida; por cuya cantidad el Sr. Llorens, acompañado de su esposa, firmará la correspondiente escritura de venta a favor de los otros firmantes en la proporción de una sexta parte para el abogado Sr. Rossy, y las otras cinco sextas partes para los cuatro hermanos Ramos Buist; repitiéndose aquí que dicha obligación de venta, por parte de los esposos Llorens Rivero, es solamente en el caso de que, por transacción o por sentencia se obtenga éxito en las referidas reclamaciones del Pueblo de Puerto Rico, es decir, en la defensa contra las mismas; y repitiéndose también que este compromiso sólo se refiere a los expresados manglares objeto de dichas reclamaciones.

"4.—Se estipula también que en todo tiempo, el Sr. Llorens tendrá la preferencia en caso de venta o arrendamiento, por parte de los otros contratantes, de la mitad que a ellos corresponde.

"5.—También reconoce el Sr. Llorens que las maderas del ranchón y caseta anexas pertenecen a Don León Ramos."

Así pues, luego de reconocer que Lloréns era dueño de la finca Monterrey y que el Pueblo de Puerto Rico pretendía sin razón reclamar una parte de la misma que consis-

tía de manglares, los contratantes sólo asumieron en síntesis las siguientes obligaciones: (1) Rossy y los hermanos Ramos Buist se comprometieron a ayudar a Lloréns en la defensa del pleito, el primero actuando como abogado y consejero y los segundos suministrando datos y antecedentes necesarios; y (2) Lloréns se comprometió ". . . *si tuviese éxito en las dichas acciones del Pueblo . . .*" a vender o traspasar en su día a los otros comparecientes la mitad de los manglares objeto de dichas reclamaciones y en ese caso a firmar la correspondiente escritura de venta en la proporción de una sexta parte para Rossy y cinco sextas partes para los hermanos Ramos Buist. Las partes fijaron como precio de venta la suma de $1,000 que consideraron ser el justo valor de la ayuda prometida por Rossy y los hermanos Ramos Buist. Aunque ya los hermanos Ramos Buist a la fecha del convenio habían cumplido con su obligación de suministrar los datos y antecedentes necesarios para la defensa del pleito, Rossy tenía que cumplir en el futuro con su obligación de ayudar a Lloréns como abogado y consejero. Las partes específicamente establecieron una condición circunstancial o de tiempo para llevar a cabo la venta prometida: cuando ". . . *por transacción o por sentencia se obtenga éxito en las referidas reclamaciones del Pueblo de Puerto Rico, es decir, en la defensa contra las mismas*". La promesa de Llorens se califica en el contrato como una *"obligación de venta"* que obviamente se refiere al hecho futuro que acabamos de mencionar. Por tanto, la única conclusión posible es que Lloréns no vendió nada ni a Rossy ni a los hermanos Ramos Buist. Sólo hizo una promesa de venta, o sea, se obligó a vender en el futuro la mitad de los manglares si salía victorioso en el pleito con El Pueblo de Puerto Rico. Dicha promesa como tal no trasmitió la propiedad ni constituyó título para la adquisición del dominio sobre la mitad de los terrenos de mangles por parte de Rossy y de los hermanos Ramos Buist. Como dijimos en *García* v. *De Jesús*, 79 D.P.R. 147 (1956): "Según reiterada doctrina del Tri-

bunal Supremo de España, interpretando el art. 1451 del Código Civil Español, equivalente al 1340 del nuestro, (ed. 1930), la promesa de comprar y vender y el contrato de compraventa, no son contratos idénticos y sus consecuencias y efectos jurídicos no pueden, por tanto, ser iguales. La promesa de comprar y vender ha sido conceptuada como un contrato preparatorio o precontrato, que tiene por objeto la futura celebración de un contrato de compraventa y cuyos efectos no pueden coincidir en absoluto con los de la venta actual y absoluta. Así, en la sentencia de 14 de noviembre de 1927—el indicado Tribunal ve en dicha promesa una modalidad contractual preparatoria de la compraventa y referida a un hecho futuro. La de 6 de diciembre de 1904 declara que quien promete vender no transfiere la propiedad, y sólo existe acción personal para exigir el cumplimiento de lo prometido. En igual sentido se pronuncia la de 4 de febrero de 1911. La de 10 de julio de 1946 estableció que en la promesa recíproca de venta, las partes no venden y compran, sino que se obligan a vender y comprar, o sea, a prestar un ulterior consentimiento. En su consecuencia la supuesta promesa de venta no confirió a la apelante título de dominio sobre la finca en litigio." (Pág. 152.)

A ese respecto poco importa que se trate de una promesa de venta unilateral o de una promesa de venta bilateral. Si Rossy y los hermanos Ramos Buist no quedaron obligados a comprar o a aceptar el traspaso del título sobre la mitad de los manglares, como aparentemente sucedió en el caso de autos, entonces sólo cabe calificar el contrato como uno de opción de compra. Cf. *Igartúa* v. *Ruiz*, 79 D.P.R. 481, 486 (1956). Aunque aceptáramos que, en virtud del convenio de 29 de octubre de 1919, Rossy y los hermanos Ramos Buist quedaron obligados a comprar la mitad de los manglares, sólo existió una promesa bilateral de compra y venta recíprocamente aceptada por los eventuales compradores y por el futuro vendedor que no equivale a una compraventa traslativa del dominio. En efecto, no hubo un consenti-

miento actual y definitivo para celebrar una compraventa y las partes se obligaron únicamente a la prestación de un consentimiento para celebrar una compraventa posterior, cuando ocurriera el hecho futuro establecido como condición para la realización de la venta prometida. Así pues, a lo sumo existió una promesa bilateral de venta que no puede equipararse en nuestro derecho a la compraventa. Véanse 4 Castán, Derecho Civil Español, Común y Foral (8ª ed. 1956) 36–42, 51–158; Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. II (1951) 83–141, 506–515; Sentencia del Tribunal Supremo de España de 11 de noviembre de 1943, 4 Jur. Civ. (2ª s.) 283, comentada en 28 Rev. de Derecho Privado, 50–54 (1944) y en 176 Rev. de Legislación y Jurisprudencia 331–343 (1944); 3 Borrell y Soler, Derecho Civil Español (1955) 225–229.

Aunque el contrato de compraventa no produce por sí sólo la transferencia del dominio, constituye un título apto para transferir la propiedad cuando tenga lugar la entrega o tradición (real o fingida) de manos del vendedor al comprador. En cambio, el futuro adquirente de la cosa en el contrato de promesa bilateral de compra y venta no adquiere el dominio mediante la tradición, ni el derecho de inscribir en el Registro de la Propiedad, ni van a su cargo los frutos y el riesgo de la pérdida. El promitente sigue siendo el propietario a todos los efectos legales: conserva el derecho de administración y de disfrute y si vende la cosa a un tercero, éste se convierte en propietario y el beneficiario de la promesa sólo podrá reclamar los daños y perjuicios. Esta solución se deriva del hecho de que la promesa bilateral de compra y venta no crea ningún derecho real, sino una simple obligación de hacer. En otras palabras, el derecho del comprador eventual no es más que un derecho personal.

Como indica Roca Sastre en sus Estudios de Derecho Privado (Vol. 1, pág. 323–362), la promesa de venta bilateral tiene la utilidad o ventaja práctica de conseguir una

vinculación inmediata de las partes, cuando por determinada circunstancia no puede llevarse a cabo una compraventa completa y definitiva. Mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. Por eso la promesa de venta es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización de un contrato de compraventa futura. Carece de finalidad o trascendencia traslativa del dominio, a diferencia de la compraventa en sí, ya que las partes no se obligan de momento a trasmitir la cosa objeto de la promesa. Así lo declara la sentencia del Tribunal Supremo de España de 14 de noviembre de 1927 (178 Jur. Civ. 317), al decir que: ". . . la promesa de comprar o vender, mediando conformidad en la cosa y en el precio, faculta a los contratantes, según el párrafo primero del artículo 1451 del Código Civil [equivalente al 1340 del nuestro], para reclamar recíprocamente su cumplimiento, puesto que . . . de ella surge el doble y recíproco vínculo que trueca en bilateral la obligación, que sin dicha circunstancia ligaría sólo la voluntad del promitente, pero teniendo en cuenta la característica de esta modalidad contractual, preparatoria tan sólo de la compraventa, o sea, la de no trasmitir el dominio de la cosa objeto de la promesa hasta que ésta no tiene cumplimiento, y que por ser éste un hecho futuro podría sobrevenir la imposibilidad de cumplirla, el legislador equipara en el párrafo segundo del artículo 1451 del Código Civil este incumplimiento fortuito al voluntario de alguno de los obligados, y autoriza la resolución del pacto con sujeción a las reglas generales de las obligaciones. . ." (Pág. 329.) La distinción entre la promesa de venta bilateral y la compraventa propia fué establecida definitivamente en la sentencia de ese mismo Tribunal de 11 de noviembre de 1943, 4 Jur. Civ. (2ª s.) 283, en que fué ponente Don José Castán Tobeñas. Allí se declara que, según el art. 1451 del Código Civil Español (1340 del nuestro): ". . . hay que aceptar

la concepción de la promesa bilateral de comprar y vender como un contrato preparatorio . . . que tiene por objeto la futura celebración de una compraventa y cuyos efectos no pueden coincidir en absoluto con los de la venta actual y definitiva." (Pág. 298.) (⁴)

Ante la negativa de una de las partes a cumplir un precontrato, cabe una acción para exigir su cumplimiento específico y no meramente una acción para el resarcimiento de perjuicios, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes. En principio, siempre que no exista una imposibilidad de hecho, puede exigirse el cumplimiento *in natura* de la obligación de otorgar un nuevo contrato de compraventa. Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública. Véanse *Carlo* v. *Vargas*, 66 D.P.R. 407, 411–412 (1946); *Caballero* v. *Kogan*, 73 D.P.R. 666 (1952) y los casos allí citados; Sentencia del Tribunal Supremo de España de 1ro. de julio de 1950, 31 Jur. Civ. (2ª s.) 697; Castán, op. cit. supra, 41–42; 1 Roca Sastre, Estudios de Derecho Privado, 323–362 (1948); González Enríquez, Naturaleza y Efectos de la Promesa de Venta, 3 Anuario de Derecho Civil 1383 (1950); Calvillo, Promesa Bilateral de Comprar y Vender: Efectos que Produce su Incumplimiento, 189 Rev. de Legislación y Jurisprudencia 580 (1951). Pero esta acción siempre es de carác-

---

(⁴) Esta doctrina ha sido reiterada en sentencias posteriores del Tribunal Supremo de España como las de 28 de marzo de 1944, 6 Jur. Civ. (2ª s.) 319; 15 de marzo de 1945, 10 Jur. Civ. (2ª s.) 160; 26 de octubre de 1946, 16 Jur. Civ. (2ª s.) 164; 19 de diciembre de 1946, 16 Jur. Civ. (2ª s.) 760; 1 de julio de 1950, 31 Jur. Civ. (2ª s.) 697; 19 de enero de 1950, 29 Jur. Civ. (2ª s.) 244; 21 de mayo de 1952, 38 Jur. Civ. (2ª s.) 1494; 13 de febrero de 1953, 41 Jur. Civ. (2ª s.) 604; 27 de febrero de 1954, 45 Jur. Civ. (2ª s.) 952; 6 de marzo de 1954, 46 Jur. Civ. (2ª s.) 112.

ter personal, ya como declara la sentencia del Tribunal Supremo de España de 6 de diciembre de 1904 (99 Jur. Civ. 501) : ". . . Es evidente que quien promete vender una cosa no transfiere la propiedad de la misma hasta que realiza la promesa; que mientras tanto ningún derecho adquiere en la cosa aquél en cuyo beneficio se hace en la promesa, teniendo sólo acción personal para exigir el cumplimiento de lo prometido . . . (y sería imposible) atender a disposiciones y principios que se refieren al caso de haberse adquirido real y legalmente la cosa de que se trata . . . por no ser dable perseguirla por acción real." (Págs. 515–16.) De igual modo la doctrina constante de nuestra jurisprudencia ha sido que la promesa de venta sólo da lugar a una acción personal. Véanse *Cordero* v. *Rivera*, 74 D.P.R. 586, 590–591 (1953) ; *Collazo* v. *Conesa*, 70 D.P.R. 155, 162–163 (1949) ; *Rullán* v. *Registrador*, 67 D.P.R. 702, 704–705 (1947) ; *Segarra* v. *Vivaldi*, 55 D.P.R. 160, 162 (1939) ; *Lange* v. *Honoré*, 47 D.P.R. 218, 222 (1934) ; *Calderón* v. *Registrador*, 46 D.P.R. 778, 780 (1934) ; *Berríos* v. *Dávila*, 28 D.P.R. 821, 823–824 (1920) y *González* v. *Lebrón*, 24 D.P.R. 399, 401 (1916).

Sentado esto, no hay duda de que procedía desestimar la demanda en cuanto a la primera causa de acción porque ésta había prescrito. La obligación de Lloréns era una de carácter personal que se extinguía por el transcurso de quince años, conforme a lo dispuesto en el art. 1864 del Código Civil (ed. 1930). En el caso de autos el término prescriptivo empezó a correr desde que la acción pudo ejercitarse, o sea, desde el 18 de febrero de 1931. Por tanto, cuando se radicó la demanda en el año 1952 había transcurrido un término en exceso de quince años. Véanse *Cordero* v. *Rivera*, supra; *Lange* v. *Honoré*, supra; y *Berríos* v. *Dávila*, supra. En esa doctrina se inspira también la sentencia del Tribunal Supremo de España de 4 de julio de 1911, (22 Jur. Civ. 40) al decir que: ". . . la demanda formulada . . . tuvo su fundamento en un contrato de promesa de venta de la finca El Solar, por lo que es indudable que

se ejercitó en ella una acción personal, la que como las de su clase, que no tienen término especial señalado en la ley, se extingue por el transcurso de quince años conforme a lo dispuesto en el art. 1964 del Código Civil [equivalente al 1864 del nuestro] . . . [y] desde 23 de enero de 1891 en que pudo aquella ejercitarse hasta el día en que se realizó en 1909, pasaron más de quince años y por ello se hallaba prescrita. . .". (Pág. 41.)

■ No tiene méritos el argumento del *amicus curiæ* en el sentido de que en Puerto Rico no procede plantear la prescripción mediante moción de desestimación. La cuestión fué resuelta por este Tribunal en *Ramos* v. *Pueblo*, 67 D.P.R. 640, 643-644 (1947) expresando lo siguiente: "Aun cuando hay algunas cortes federales que sostienen que la defensa de prescripción debe alegarse afirmativamente en la contestación bajo la Regla 8(*c*) y que no procede levantarla por moción bajo la Regla 12(*b*)(6)—*Curtis* v. *Meyer Malt & Grain Corp.*, (1947) 6 F.R.D. 444, 10 Fed. Rules Service 12*b*.325; *Baker* v. *United States*, 3 Fed. Rules Service 12*b*.325; *Patsavouras et al.* v. *Garfield*, 34 F. Supp. 406—otras cortes han dado una interpretación más liberal a las reglas y han resuelto que si de la faz de la demanda aparece que la acción está prescrita la cuestión puede levantarse por moción para desestimar bajo la Regla 12(*b*)(6). Véanse *Leimer* v. *State Mut. Life Assur. Co.*, 108 F.2d 302 (C.C.A. 8, 1940); *A. G. Reeves Steel Const. Co.* v. *Weiss*, 119 F.2d 472 (C.C.A. 6, 1941); *Gossard* v. *Gossard*, 149 F.2d 111 (C.C.A. 10, 1945). El fundamento que nos lleva a aceptar esta última jurisprudencia es que si bajo la Regla 9(*f*): 'A los fines de determinar la suficiencia de una alegación todas las alegaciones de tiempo y lugar son esenciales y serán consideradas de la misma manera que todas las demás alegaciones de materia esencial,' no hay razón entonces para obligar a la parte demandada a levantar la cuestión de prescripción como defensa afirmativa bajo la Regla 8(*c*). Siendo la alegación de tiempo, en relación con

la prescripción, una materia esencial a la causa de acción, puede, por tanto, desestimarse por moción una demanda que no contenga dicha alegación." Véanse al mismo efecto *Bithorn* v. *Santana*, 68 D.P.R. 300, 306–307 (1948) ; *Iturriaga* v. *Fernández*, 78 D.P.R. 31, 35 (1955) ; 2 Moore's *Federal Practice* (2ª ed.) sec. 12.10 y los casos allí citados.

La distinción que pretende hacer el *amicus curiæ* entre la prescripción de carácter sustantivo y la de carácter procesal no altera en nada la situación. Tal distinción tenía importancia en la jurisdicción federal en virtud de la antigua doctrina procesal que no permitía plantear la prescripción mediante una excepción previa excepto cuando se trataba de la prescripción de carácter procesal, o sea, cuando la limitación de tiempo era parte integrante de un derecho o remedio creado por el estatuto. Véase 5 *Cyclopedia of Federal Procedure*, sec. 15.520. Sin embargo, la Regla 9 (*f*) alteró esa norma procesal y, como antes señalamos, permite que se plantee la defensa de prescripción mediante una moción de desestimación si de la faz de la demanda aparece que la acción está prescrita.(⁵) La demanda de intervención en el caso de autos alega expresamente que en 18 de febrero de 1931 se dictó sentencia final a favor de Lloréns en el litigio con el Pueblo de Puerto Rico que versaba sobre el título de los terrenos de mangles *objeto del convenio privado sobre promesa de venta*. A tenor con el art. 1869 del Código Civil (ed. 1930), 31 L.P.R.A. sec. 5299, el término prescriptivo de la acción personal para exigir el cumplimiento de la promesa empezó a correr desde la fecha en que se cumplió dicha condición suspensiva y el causante del interventor, peticionario ante nos, pudo legalmente interponer acción judicial contra Lloréns. Por tanto, aquí aparece de la faz de la demanda que la acción estaba prescrita cuando se instó el pleito en 1952.

---

(⁵) A idéntica conclusión debemos llegar aplicando las reglas 7.6 y 10.2 (5) de Procedimiento Civil para el Tribunal General de Justicia que son equivalentes a las Reglas 9 (*f*) y 12 (*b*) (6) de las de Enjuiciamiento Civil de 1943.

■ La alegación de la demanda en el sentido de que establecida la comunidad Lloréns continuó en la posesión de los terrenos en nombre y representación de todos los componentes de dicha comunidad, no permite implicar que Llorens reconoció su obligación y que, por tanto, el término prescriptivo de 15 años quedó interrumpido de acuerdo con el art. 1873 del Código Civil (ed. 1930) 31 L.P.R.A. sec. 5303. Esa implicación debe ser rechazada ya que la misma descansa en la premisa de que el convenio privado era un contrato de compraventa y que, verificada la tradición, se estableció una comunidad de bienes entre los firmantes del mismo. Ya hemos resuelto lo contrario. Por otro lado, apareciendo de la faz de la demanda que había transcurrido el término prescriptivo aplicable, correspondía al demandante alegar la interrupción de dicho término por el ejercicio de la acción judicial correspondiente o por reclamación extrajudicial del acreedor. Sería excepcionalmente raro que de la demanda se desprenda afirmativamente que no ha ocurrido una interrupción del término prescriptivo. Exigir tal cosa haría letra muerta lo dispuesto en las Reglas 9(*f*) y 12(*b*) antes citadas y desvirtuaría la doctrina procesal sentada en el caso de *Ramos* v. *Pueblo*, supra. Véanse Brown, *Some Problems Concerning Motions Under Federal Rule 12(b)*, 3 F.R.D. 146; y 2 Moore, *op. cit.* supra, sec. 12:10. Por lo demás, en *Bithorn* v. *Santana*, 68 D.P.R. 300 (1948), resolvimos que al oponerse a una moción de desestimación fundada en la prescripción de la acción, el demandante debe alegar o probar la interrupción del término mediante reclamación extrajudicial contra el acreedor. Cf. *De Jesús* v. *Abbott*, 77 D.P.R. 516, 524–525 (1954). Véase al mismo efecto *A. G. Reeves Const. Co.* v. *Weiss*, 119 F.2d 472, 476 (C.A. 6, 1941).

## II

■ En su segundo señalamiento de error el peticionario se queja de que el tribunal recurrido haya ordenado la eliminación de los párrafos segundo, tercero y cuarto de la

segunda causa de acción alternativa. Esos párrafos constituían la médula de la mencionada causa de acción. Por tanto, su eliminación equivalía en verdad a la desestimación de dicha causa de acción. En síntesis, se alegó en ellos (1) que al otorgarse la escritura núm. 42 de 29 de octubre de 1919 y el contrato privado de esa misma fecha, el propósito y la intención de las partes fué trasmitir a Llorens sólo los terrenos firmes y la mitad de los manglares de la finca, pero que la otra mitad de los terrenos de mangle fueron trasmitidos a Lloréns como fiduciario (*trustee*), para beneficio de Rossy y de los hermanos Ramos Buist; (2) que la forma de distribuir parte de los mangles de la finca trasmitida a Lloréns era un medio para compensar a Lloréns y a Rossy por sus servicios profesionales a favor de los hermanos Ramos Buist en el pleito contra el Pueblo de Puerto Rico; (3) que el precio de venta pactado en la escritura cubrió únicamente los terrenos secos y firmes de la finca y *"la causa o consideración de la trasmisión al Sr. Lloréns Torres de los terrenos de mangles lo fué la del valor de sus servicios profesionales como abogado en cuanto a una mitad de dichos manglares, quedando la otra mitad siempre de la propiedad y pleno dominio de los causantes de los otros demandantes* (es decir de los hermanos Ramos Buist), *los cuales reconocieron a su abogado don Manuel F. Rossy . . . una sexta parte de dicha mitad como compensación por servicios, todo sujeto a la condición de que finalmente se resolviera a favor del Sr. Llorens Torres el pleito sobre la propiedad de los manglares con el Pueblo de Puerto Rico."* (Bastardillas nuestras.)

El tribunal a quo decretó la eliminación de dichos párrafos por el fundamento de que sería inadmisible prueba para sostener las alegaciones en ellos contenidas. Determinó que iban dirigidas a desvirtuar el convenio escrito entre las partes, contrario a lo dispuesto en el art. 25 de la Ley de Evidencia (32 L.P.R.A. sec. 1668), el cual establece en Puerto Rico la regla que se conoce en el derecho angloamericano como

"parole evidence rule". *Collazo* v. *Conesa*, 70 D.P.R. 155, 164 (1949); *París* v. *Canety*, 73 D.P.R. 403 (1952) y *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816 (1953). Hay jurisprudencia en el sentido de que cuando no es admisible prueba para sostener una alegación ésta puede eliminarse. *Parks-Cramer Co.* v. *Mathews Cotton Mills*, 36 F. Supp. 236 (W.D.S.C. 1940); *Mebco Realty Holding Co.* v. *Warner Bros. Pictures, Inc.*, 6 Fed. Rules Serv. 12.f.21 (N. J. 1942). No obstante, como dijimos en *Tartak* v. *Tribunal de Distrito*, 74 D.P.R. 862 (1952), las mociones eliminatorias de alegaciones no son favorecidas. Sólo debe ordenarse una eliminación si la alegación no tiene relación alguna con la cuestión en controversia o si es claramente redundante, inmaterial, impertinente o escandalosa. Véase 2 Moore's *Federal Practice* (2d ed.) sec. 12.21. Además, no hay duda de que sería admisible prueba para demostrar que la causa expresada en la escritura núm. 42 de 29 de octubre de 1919 o la consignada en el convenio privado de esa misma fecha no fué la que en verdad indujo a las partes a hacer dichos contratos. Y la regla que excluye evidencia extrínseca para contradecir o variar los términos de un convenio escrito tampoco impide probar cuál fue la verdadera transacción entre las partes, aunque ésta resulte distinta a la que se hizo constar en un documento público o privado. *Marxuach* v. *Acosta*, 39 D.P.R. 965 (1929); *Ochoteco, Jr.* v. *Córdova*, 47 D.P.R. 554 (1934); *Ramírez* v. *Ramírez*, 65 D.P.R. 544 (1946); y *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816 (1953); 3 Corbin *on Contracts* (1951) secs. 573–596. Por tanto, creemos que no procedía eliminar las alegaciones contenidas en la segunda causa de acción a base del art. 25 de la Ley de Evidencia antes citado.

Ahora bien, es preciso resolver en este recurso si la segunda causa de acción debió desestimarse por que se hallaba prescrita. En efecto, la parte demandada planteó la defensa de prescripción en su moción de desestimación en cuanto a. todas y cada una de las cuatro causas de acción

alegadas por el interventor. Y en *certiorari* procede dictar la sentencia que debió dictar el tribunal *a quo,* igual que sucede en apelación. *Villaronga* v. *Tribunal,* 74 D.P.R. 331, 346 (1953) y *Borinquen Furniture* v. *Tribunal,* 78 D.P.R. 901, 903 (1956). Aquí estamos en condiciones de hacerlo pues la cuestión sólo envuelve una determinación sobre el punto de derecho. No podríamos negarnos a considerarla sin faltar a nuestro deber de hacer justicia sustancial. Cf. *Piovanetti* v. *Vivaldi,* 80 D.P.R. 108, 121–123 (1957).

 Considerando las alegaciones contenidas en la segunda causa de acción, a la luz de la situación más favorable para el demandante, creemos que las reclamaciones allí expuestas contra los demandados se hallaban prescritas en 1952 cuando se presentó la demanda. En efecto, los fideicomisos expresos (intervivos o constituídos sobre bienes inmuebles) deben constar en escritura pública que es preciso inscribir en el Registro de la Propiedad. Arts. 836 y 838 del Código Civil (ed. 1930), 31 L.P.R.A. secs. 2543 y 2545. Además, nuestra ley prohibe los fideicomisos secretos. Art. 844 del Código Civil (ed. 1930), 31 L.P.R.A. sec. 2551. Por tanto, la reclamación de Rossy basada en la existencia de un fideicomiso implícito (ya sea el "resultante" o el denominado "constructivo") constituye una acción para que el supuesto fiduciario cumpla con la alegada obligación de traspasarle una sexta parte de los manglares a fin de evitar un enriquecimiento injusto. Ya hemos resuelto en *McCormick* v. *González Martínez,* 49 D.P.R. 473, 496–497 (1936) y en *Fernández* v. *Laloma,* 56 D.P.R. 367, 380 (1940), que dicha acción es una de carácter personal que prescribe a los quince años desde que pudo ejercitarse, a tenor con lo dispuesto en el art. 1864 del Código Civil (ed. 1930). Cf. 4 Scott *on Trusts* (2ª ed.) 2924–2930, 2933–2935, 3150–3152; Anotación en 52 A.L.R. 2d 220 (1957); Scott, *Resulting Trusts Arising Upon the Purchase of Land,* 40 Harv. L. Rev. 669 (1927); y 34 *Am. Jur., Trusts,* secs. 175–180. Es cierto que en el sistema de derecho angloamericano no se aplica la prescripción a la acción

basada en un fideicomiso resultante y sólo rige el concepto de *"laches"*. Pero en Puerto Rico el plazo de quince años, establecido en la ley para todas las acciones personales que no tengan señalado término especial de prescripción, rige en cuanto a la acción para exigir el cumplimiento de un fideicomiso implícito, tanto resultante como constructivo. Esto es así porque la doctrina de los fideicomisos implícitos fué incorporada en Puerto Rico mediante doctrina jurisprudencial con el fin de evitar el enriquecimiento injusto en situaciones aparentemente no previstas por nuestro derecho positivo. Véanse *Luperena* v. *Autoridad de Transporte*, 79 D.P.R. 464, 472–474 (1956) y los casos allí citados; Dawson, *Unjust Enrichment* (1951); Rabasa, El Derecho Angloamericano (1944) 316–340. Es muy probable que a través de los cuasicontratos y de la acción clásica de enriquecimiento injusto, denominada *in rem verso* porque persigue la restitución, puedan remediarse en nuestro derecho todos los desplazamientos patrimoniales directos e indirectos sin causa jurídica que los motiven.(6) Si esto fuera así, la existencia de fideicomisos implícitos resultaría innecesaria en el derecho puertorriqueño. En todo caso, es imposible aplicar a la acción para exigir el cumplimiento de un fideicomiso implícito un término prescriptivo distinto al que rige en cuanto a las acciones para evitar un enriquecimiento injusto. Como es sabido, la acción para exigir el cumplimiento de un cuasicontrato y la acción *in rem verso* prescriben a los quince años desde la fecha en que pudieron ejercitarse. Véanse en ese sentido Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. II (1951) 566; y 2 Díaz Pairó, Teoría General de las Obligaciones (1954) 26. Bajo la teoría del enriqueci-

---

(6) Véanse Núñez Lagos, El Enriquecimiento sin Causa en el Derecho Español (1934); Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. II (1951) 559–566; 2 Díaz Pairó, Teoría General de las Obligaciones (1954) 18–42; 7 Planiol y Ripert, *Traité Pratique de Droit Civil Francais* (1954) 47–78; Goré, *L'Enrichissement Aux Dépens d'Autrui* (1949); y Ripert, *La Regle Morale Dans les Obligations Civiles* (4ª ed.) 1949, 244–269.

752

miento injusto, de no estar prescrita su acción, el interventor hubiese tenido derecho a la restitución de la cosa específica (una sexta parte de los terrenos de mangles) si en el momento de entablar la acción dichos terrenos aún se encontraban *in natura* en el patrimonio del enriquecido, es decir, de Lloréns o de sus herederos. Pero nunca se trata de una reivindicación ni de una acción real, sino del cumplimiento específico de una obligación personal. Véase Núñez Lagos, El Enriquerimiento sin Causa en el Derecho Español (1934); Castán, op. cit. supra, 793–814; Josserand, Derecho Civil, Tomo II, Vol. I (trad. esp. 1950) 450–462; 1 Roca Sastre, Estudios de Derecho Privado (1948) 485–520; Puig Brutau, Fundamentos de Derecho Civil, Tomo II, Vol. II (1956) 603–657.

■ Las alegaciones de que la forma de distribuir parte de los manglares de la finca trasmitida a Lloréns constituía un medio para compensar a Rossy por sus servicios profesionales en el pleito contra el Pueblo de Puerto Rico, sólo exponen una causa de acción fundada en una promesa de venta. Bajo esta teoría sólo se alega que Lloréns se comprometió a pagar los honorarios de abogado de Rossy mediante una promesa de traspasarle en el futuro una sexta parte de la mitad de los terrenos de mangles. No se alega que Rossy era dueño de una sexta parte de dichos terrenos antes de haberse firmado la escritura y el convenio privado de 29 de octubre de 1919. Y según esta teoría, después de firmarse dichos contratos, sólo procedía una acción personal de Rossy contra Lloréns para obtener el cumplimiento de una promesa de venta. Al igual que la primera causa de acción, esta reclamación se hallaba prescrita en 1952 porque habían transcurrido más de quince años desde la fecha en que pudo ejercitarse.

■ Las alegaciones contenidas en el párrafo tercero de la segunda causa de acción, como señalamos anteriormente, son las siguientes: (1) que el precio de venta pactado en la escritura núm. 42 de 29 de octubre de 1919, entre

los vendedores hermanos Ramos Buist y el comprador Lloréns Torres cubrió únicamente los terrenos secos; y (2) que la causa o consideración de la trasmisión por dicha escritura de los terrenos de mangles a Lloréns fue el valor de sus servicios profesionales como abogado en cuanto a una mitad de dichos manglares, quedando la otra mitad siempre de la propiedad y pleno dominio de los hermanos Ramos Buist, los cuales reconocieron a Rossy una sexta parte de dicha mitad como compensación por sus servicios profesionales, en caso de. que se resolviera favorablemente el pleito con el Pueblo de Puerto Rico. Es obvio que estas alegaciones sólo podrían interpretarse como una reclamación *de los hermanos Ramos Buist contra los demandados*, para reivindicar el título de una mitad de los manglares, basada en que la venta era nula e inexistente por no haber mediado causa o consideración para el traspaso de esa parte de los manglares. Si hubo falta absoluta de causa y de consentimiento, se produciría entonces la *inexistencia* parcial del contrato de venta consignado en la mencionada escritura. Dicha inexistencia sería perpetua e insubsanable, no pudiendo ser objeto de prescripción extintiva. Véanse *Guzmán* v. *Guzmán*, 78 D.P.R. 673 (1955); *González Rodríguez* v. *Fumero*, 38 D.P.R. 556 (1928); *Hernández* v. *Ayala*, 68 D.P.R. 956 (1948); *Cintrón* v. *Cintrón*, 70 D.P.R. 770 (1950). Cf. *Ruiz* v. *Ruiz*, 61 D.P.R. 823 (1943); *Ramírez* v. *Ramírez*, 65 D.P.R. 544 (1946) y *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816 (1953); Castán, Derecho Civil Español, Tomo I, vol. II (9ª ed. 1955) 684–689. Pero esta acción correspondería únicamente a los hermanos Ramos Buist que, según las alegaciones antes mencionadas, eran los dueños de la finca antes de celebrarse el contrato de compraventa. Así lo confirma la alegación de que, por no haber mediado causa, la mitad de los manglares *quedaron siempre de la propiedad y pleno dominio de los hermanos Ramos Buist*. Aunque se alega además que éstos "reconocieron a su abogado Don Manuel F. Rossy una sexta parte de dicha mitad como compensación por servicios, *todo*

*sujeto a la condición de que finalmente se resolviera a favor del Sr. Llorens Torres el pleito sobre la propiedad de los manglares con el Pueblo de Puerto Rico"*, esto no da derecho real alguno a Rossy para instar una acción contra los demandados, amparándose en la alegada inexistencia de la venta que los hermanos Ramos Buist hicieron a Lloréns Torres por la escritura pública núm. 42 de 29 de octubre de 1919.

*En virtud de las razones expuestas, se anulará el auto expedido, en tanto la resolución del tribunal a quo declaró prescritas la primera, tercera y cuarta causas de acción alegadas en la demanda; se dejará sin efecto dicha resolución en tanto ordenó la eliminación de los párrafos segundo, tercero y cuarto de la segunda causa de acción; y se dictará sentencia declarando prescrita la segunda causa de acción alegada por el interventor en su demanda, devolviéndose el caso para ulteriores procedimientos compatibles con esta opinión.*

El Juez Asociado Sr. Pérez Pimentel no intervino.