**REDBRICK PARTNERS, LP,**
**et al., Plaintiff(s)**

**v.**

**Nicolas GAUTIER, et al., Defendant(s).**

**Civil No. 05–1635 (FAB).**

United States District Court,
D. Puerto Rico.

April 5, 2007.

Maria S. Hopgood–Matias, Roberto Boneta, Maria T. Figueroa–Colon, Munoz, Boneta, Benitez, Peral & Brugueras, San Juan, PR, for Plaintiffs.

Maria S. Hopgood–Matias, Roberto Boneta, Munoz, Boneta, Benitez, Peral & Brugueras, Gerardo Pavia, Pavia & Diaz Garcia, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On February 28, 2006, plaintiffs Redbrick Partners, LP, Redbrick PR I, LLC, and Redbrick Partners II, LLC (collectively "Redbrick Partners" or "plaintiffs") filed an amended complaint against defendants Nicolas Gautier ("Gautier"), Ramon Ayala Cuervos, Las Camelias, S.E., a/k/a Las Camelias Torre A Apartments Limited Dividend Partnership, S.E., Las Camelias Torre B Apartments Limited Dividend Partnership, S.E., and Surco Rental Group Corporation (collectively "defendants"), alleging breach of contract (Docket No. 24). The Court's jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332. On September 25, 2006, defendants moved for summary judgment on plaintiffs' claims (Docket No. 28). On October 31, 2006, plaintiffs opposed the motion (Docket No. 31). For the reasons discussed below, the Court **DENIES** defendants' motion for summary judgment.

## FACTUAL BACKGROUND

In March 2005, plaintiffs approached the defendants interested in purchasing two residential apartment buildings known as Laguna View I and Laguna View II in San Juan, Puerto Rico (the "project"). On April 13, 2005, after some negotiation, plaintiffs sent a letter of intent to Gautier containing the essential terms for the sale of the project to plaintiffs. On April 15, 2005, Gautier, in representation of all defendants, signed the letter of intent.

The letter of intent stated that the parties would obligate themselves to formalize and execute a definitive purchase agreement within seven days from the date of execution of the letter. The letter of intent, among other things, identified the real estate and related accounts which plaintiffs intended to purchase from the defendants and established the agreed-upon purchase price of $13,130,000. After two extensions, the parties finally set May 18, 2005 as the date for the execution of the purchase agreement. During this time, the parties exchanged several drafts of the purchase agreement, the last one being sent by the plaintiffs to the defendants on May 10, 2006. Defendants did not raise any objections to that last draft of the purchase agreement between May 10 and 18, 2005. On or about May 15, 2005, Popular Mortgage, the mortgage company who was handling defendants' refinancing, informed the defendants that the property had been appraised at around $19,000,000.

On May 18, 2005, defendants did not appear to execute the purchase agreement. On May 19, 2005, plaintiffs' counsel contacted defendants' counsel to coordinate another date for execution of the purchase agreement. Defendants' counsel informed him that the defendants decided not to go through with the sale because it was not fiscally or economically convenient for them. Also on that date, Defendants' counsel sent a letter to the plaintiffs expressing the defendants' refusal to execute the purchase agreement. On May 20, 2005, plaintiffs counsel sent defendants a letter requesting specific performance of their legally binding obligation to execute the purchase agreement, and set the date for May 25, 2005. On May 24, 2005, defendants reiterated that they would not ap-

pear to execute the purchase agreement. This suit soon followed.

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### B. *Defendants' Motion for Summary Judgment*

In their motion, defendants' argument is twofold. First, they argue that they had a right to withdraw from the negotiations and that the mere termination of the negotiations is insufficient to provide plaintiffs with a cause of action. Second, they argue that because they did not agree as to the definitive purchase agreement, the plaintiffs are not entitled to specific performance of the letter of intent. The Court will address each argument in turn.

For their first argument, defendants rely on the Puerto Rico Supreme Court's

decision in *Producciones Tommy Muñiz v. COPAN*, 113 D.P.R. 517, 13 P.R. Offic. Trans. 664 (1982). In that case, a television producer who had won the bidding process for the right to broadcast the VIII Panamerican Games sued the games' organizers after they withdrew from negotiations to finalize an agreement. The Supreme Court found that a contract did not exist between the parties due to a lack of consent because of a misunderstanding concerning a broadcast center the organizers required. The Court, however, found that although no contract was finalized and that it had a right to withdraw from the negotiations, the defendant could still be held liable for an unjustified break from negotiations in violation of the principle of good faith which controls pre-contractual negotiations. In fact, the Court indicated that the defendant had abused the exercise of its right to withdraw from the negotiations.

Defendants reliance on *Producciones Tommy Muñiz* is misplaced. They cite the case as support for the proposition that they were free to withdraw from the negotiations at any time. As the case clearly states, however, the right to withdraw from negotiations can be abused if done in bad faith.

■ Contrary to defendants' representation, they were not at liberty to withdraw from negotiations at will, but were bound to complete and execute the purchase agreement. The letter of intent signed by Gautier in representation of all defendants created an obligation for the defendants to in good faith "use reasonable efforts to formalize and execute a definitive purchase agreement within 7 days ... pursuant to which Buyer will purchase from Seller" all its interests in the project.

(Docket No. 28, Exh. 1). Clearly, the parties signed a precontract whereby they obligated themselves to execute a purchase agreement at a later date. *See, e.g., Rossy v. Tribunal Superior,* 80 D.P.R. 729, 740, 80 P.R.R. 705, 715 (1958) ("The promise to buy and sell has been deemed as a preparatory contract or precontract, the purpose of which is the future execution of a contract of sale . . . ."). From the text of the letter it is also clear that the essential terms of the purchase agreement had already been established. The only thing left for the parties to do was to reduce the agreement to writing and not, as defendants argue, to enter into negotiations for the purchase, since the price and what was being bought had already been agreed upon. The short period of time provided for the execution of the contract also raises an inference that there was little left, if anything, to negotiate.

The facts of this case simply do not establish a case of *culpa in contrahendo* as in *Producciones Tommy Muñiz*, but rather a case of breach of contract.[1] The defendants had a legally binding obligation to formalize and execute a purchase agreement within a specific period of time, and they defaulted in that obligation. Thus, for opting not to go through with the sale, defendants can be held liable for breach of the precontract.

■ On the other hand, the agreement between the parties cannot be considered as a definitive purchase agreement. Although the letter of intent does contain all the essential elements of a contract of sale (agreement upon the thing that is the object of the contract and upon the price, P.R. Laws Ann. 31 § 3746) the Supreme Court of Puerto Rico has stated that pre-

---

1. The difference is in the measure of damages, since damages in cases of *culpa in contrahendo* are limited to the costs suffered and losses derived from the defaulting party's arbitrary actions. *Colon v. Glamorous Nails, Inc.,* 2006 T.S.P.R. 16.

contracts do not have the same effect as the contract of sale which the parties have obligated themselves to execute. *Rossy*, 80 D.P.R. at 740, 80 P.R.R. at 715 ("[T]he promise to buy and sell and the contract of sale are not identical and their consequences and juridical effects can not therefore be the same."); *Jordan–Rojas v. Padro-Gonzalez*, 103 D.P.R. 813, 817, 3 P.R. Offic. Trans. 1136, 1141 (1975)("[T]he effects of a promise of purchase and sale-considered as a preliminary contract or pre-contract-cannot coincide with those of an actual, absolute, and complete sale....."). Thus, even if the price and object were agreed upon in the precontract, it only created an obligation to execute another subsequent contract and does not transfer ownership of the property nor does it give plaintiffs the right to demand transfer of ownership.

Although the obligation created by the precontract is of a personal nature, plaintiffs may nevertheless request as a remedy the specific performance of the precontract, which would force the defendants to execute the contract of sale and the corresponding public deed.

■ "A promise to sell or buy, there being an agreement as to the thing and price, gives a right to the contracting parties to mutually demand the fulfillment of the contract." P.R. Laws Ann. 31 § 3747.

> In view of the refusal of one of the parties to comply with a precontract, an action to demand specific performance will lie, if the basic obligation does not refer to purely personal acts or the basic conditions set out in the precontract are not insufficient ... Thus, if the thing promised for sale is still in the possession of the promiser, the creditor in a bilateral contract of promise to sell certain real property could demand its specific performance: the execution of the

sale previously agreed upon and the corresponding public deed.

*Rossy*, 80 D.P.R. at 743, 80 P.R.R. 718. When the elements of the definitive contract have been established in a precontract, if one of the parties does not fulfill its obligation, the other is entitled to request its specific performance. *See* II–2 José Puig Brutau, *Fundamentos de Derecho Civil* 45 (2d Ed., Bosch, Barcelona 1982). *See also* Pedro F. Entenza Escobar, *La responsabilidad precontractual en Derecho puertorriqueño*, 7 Rev. Der. P.R. 105, 111 (1963).

■ Because the property subject of the precontract is still in defendants' possession, and because the precontract contains all the essential terms of the sale, specific performance of the precontract is not an impossibility and, pursuant to Puerto Rico Supreme Court precedent, is available as a possible remedy.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' motion for summary judgment (Docket No. 28).

**IT IS SO ORDERED.**